UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

DELRAY RICHARDSON,

                        Plaintiff,

        - against -

TOWNSQUARE MEDIA, INC.,

                      Defendant.

--------------------------------------------------------------- x

        1:24-cv-04217-AKH

        **ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TOWNSQUARE MEDIA, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

**DAVIS WRIGHT TREMAINE LLP**

Rachel F. Strom
Abigail B. Everdell
Celyra I. Myers
1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 489-8230 – Phone
(212) 489-8340 - Fax
abigaileverdell@dwt.com
rachelstrom@dwt.com
celyramyers@dwt.com

*Attorneys for Defendant Townsquare Media, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    The Parties ........................................................................................................ 2

    B.    The Melle Mel Video ....................................................................................... 3

    C.    The Jordan Video .............................................................................................. 4

    D.    Plaintiff's Claims ............................................................................................. 5

ARGUMENT ...................................................................................................................... 5

    I.    Townsquare's Embedding of the Melle Mel Video Was Authorized Under
        YouTube's Terms of Service ............................................................................ 7

        A.    YouTube's Terms of Service Grant a Clear and Unambiguous License .... 9

    III.    Townsquare's embedding of the Jordan Video Was Fair Use ........................... 11

        A.    Courts in this Circuit Regularly Dismiss Copyright Claims at the Pleading
            Stage on Fair Use Grounds ...................................................................... 11

        B.    Townsquare's Use of the Jordan Video Was Fair Use ............................. 12

            1.    The Purpose and Character of Townsquare's Use ........................ 13

            2.    The Nature of the Videos .............................................................. 15

            3.    The Amount and Substantiality of the Use ................................... 17

            4.    The Effect of the Use Upon the Potential Market ........................ 18

    IV.    Townsquare's Uses of the Screenshots from the Melle Mel Video and Jordan
        Video Were Not Actionable ............................................................................ 20

        A.    Townsquare's Use of Two Screenshots Was *De Minimis* Use ................ 20

        B.    Townsquare's Use of the Screenshots Was Fair Use ............................... 22

            1.    The Purpose and Character of Townsquare's Use ........................ 22

            2.    The Nature of the Videos .............................................................. 23

3.     The Amount and Substantiality of the Use ................................... 23

4.     The Effect of the Use Upon the Potential Market......................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adjmi v. DLT Entm't Ltd*.,
    97 F. Supp. 3d 512 (S.D.N.Y. 2015)....................................................................................11

*Andy Warhol Found. For the Visual Arts v. Goldsmith*,
    598 U.S. 508 (2023).........................................................................................................13, 22

*Arica Inst., Inc. v. Palmer*,
    970 F.2d 1067 (2d Cir. 1992)...............................................................................................15

*Ariel (UK) Ltd. v. Reuters Grp. PLC*,
    2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006) *aff'd*, 277 F. App'x 43 (2d Cir. 2008) ..............8

*August Image, LLC v. Girard Ent. & Media LLC*,
    2024 WL 1375480 (S.D.N.Y. Apr. 1, 2024), *appeal filed,* No. 24-994 ...........................11, 15

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d. Cir. 2014), *cert denied,* 578 U.S. 941 (2016)......................................18, 24

*Barcroft Media, Ltd. v. Coed Media Grp*.,
    LLC, 297 F. Supp. 3d 339 (S.D.N.Y. 2017) ..............................................................14, 16, 22

*Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*,
    386 F. Supp. 2d 324 (S.D.N.Y. 2005), *aff'd sub nom.*, Bill Graham Archives v. Dorling
    *Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006)............................................................15, 17, 18

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)...................................................................................13, 15, 18

*Bus. Casual Holdings, LLC v. TV-Novosti*,
    2022 WL 784049 (S.D.N.Y. Mar. 14, 2022) ..........................................................................3

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994).........................................................................................13, 14, 23

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013)...................................................................................13, 18, 23

*Effie Film, LLC v. Murphy*,
    932 F. Supp. 2d 538 (S.D.N.Y. 2013)..................................................................................11

*Ferdman v. CBS Interactive Inc.*,
    342 F. Supp. 3d 515 (S.D.N.Y. 2018)..................................................................................14

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)........................................................................................6

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012).......................................................................8

*Fuentes v. Mega Media Hldgs*,
    2011 WL 2601356 (S.D. Fla. June 9, 2011) ............................................................24

*Gordon v. McGinley*,
    2011 WL 3648606 (S.D.N.Y. Aug. 18, 2011), *aff'd in relevant part*, 502 F. App'x 89 (2d Cir. 2012) ........................................................................................................................21

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008).....................................................................20

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998)......................................................................................8

*Harbus v. Manhattan Inst. for Policy Research, Inc.*,
    2020 WL 1990866 (S.D.N.Y. Apr. 27, 2020)..........................................................25

*Hotel Employees & Rest. Employees Union, Local 100 v. New York Dep't of Parks & Recreation*,
    311 F.3d 534 (2d Cir. 2002)......................................................................................7

*Island Software & Computer Serv. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)....................................................................................21

*Jasper v. Sony Music Entm't, Inc.*,
    378 F. Supp. 2d 334 (S.D.N.Y. 2005).......................................................................8

*Juster Assocs. v. City of Rutland*,
    901 F.2d 266 (2d Cir. 1990)......................................................................................6

*Konangataa v. American Broad. Cos., Inc.*,
    2017 WL 2684067 (S.D.N.Y. June 21, 2017) ...................................................21, 22

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)......................................................................................6

*Lasica v. America Online, Inc.*,
    2015 WL 12791495 (C.D. Cal. Sept. 3, 2015) .........................................................8

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998)....................................................................................18

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
    279 F. Supp. 3d 497 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) ...................... 11

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .......................................................................................... 6

*Marano v. Metropolitan Museum of Art*,
    844 F. App'x 436 (2d Cir. 2021), *cert denied,* 142 S. Ct. 213 (2021) .................................... 17

*McGucken v. Newsweek LLC*,
    464 F. Supp. 3d 594 (S.D.N.Y. 2020) .......................................................................... 6

*McKinley v. Crevatas*,
    2022 WL 2066195 (S.D.N.Y. June 8, 2022) .................................................................. 3

*Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*,
    935 F. Supp. 490 (S.D.N.Y. 1996) ................................................................... 16, 23, 24

*Moss v. Infinity Ins. Co.*,
    2016 WL 7178559 (N.D. Cal. Dec. 9, 2016) .................................................................. 7

*Nat'l Center for Jewish Film v. Riverside Films, LLC*,
    2012 WL 4052111 (C.D. Cal. Sept. 14, 2012) ............................................................... 24

*Nicklen v. Sinclair Broad. Grp., Inc.*,
    551 F. Supp. 3d 188 (S.D.N.Y. 2021) .................................................................... 18, 19

*North Jersey Media Grp. Inc. v. Pirro*,
    74 F. Supp. 3d 605 (S.D.N.Y. 2015) .......................................................................... 16

*NXIVM Corp. v. Ross Inst.*,
    364 F.3d 471 (2d Cir. 2004) ...................................................................................... 13

*Otto v. Hearst Commc'ns, Inc.*,
    345 F. Supp. 3d 412 (S.D.N.Y. 2018) .................................................................... 16, 23

*Patsy's Italian Restaurant, Inc. v. Banas*,
    575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F. 3d 254 (2d Cir. 2011) ........................... 7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .................................................................................... 16

*Person v. Google Inc.*,
    456 F. Supp. 2d 488 (S.D.N.Y. 2006) .......................................................................... 8

*Ringgold v. Black Entertainment Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997) .................................................................................. 14, 20

*Rudkowski*, v. *Mic Network, Inc.*,
    2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018) ...........................................................20, 21, 22

*Sands v. Bauer Media Group USA, LLC*,
    2019 WL 4464672 (S.D.N.Y. Sept. 18, 2019).......................................................................12

*Schneider v. YouTube, LLC*,
    649 F. Supp. 3d 872 (N.D. Cal. 2023) ...................................................................................10

*Schneider v. YouTube, LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023) .....................................................................................9

*Schwartz v. HSBC Bank USA, N.A.*,
    160 F. Supp. 3d 666 (S.D.N.Y. 2016).......................................................................................6

*Schwartzwald v. Oath, Inc.*,
    2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020)........................................................................16

*Sellers v. M.C. Floor Crafters, Inc.*,
    842 F.2d 639 (2d Cir. 1988).....................................................................................................6

*Sketchworks Indus. Strength Comedy, Inc. v. Jacobs*,
    2022 WL 1501024 (S.D.N.Y. May 12, 2022) .......................................................................11

*SOFA Entertainment, Inc. v. Dodger Productions, Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ..........................................................................................12, 24

*Song Fi, Inc. v. Google Inc.*,
    72 F. Supp. 3d 53 (D.C. 2014)..................................................................................................8

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ......................................................................................7, 8

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014).......................................................................................11, 15, 17

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    861 F. Supp. 2d 336 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 17 (2d Cir. 2014) .............................17

*Tatum v. X Corp.*,
    2024 WL 2165338 (E.D.N.C. May 13, 2024) ..........................................................................6

*TCA TV Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016)..............................................................................................17, 23

*Trump v. Vance*,
    977 F.3d 198 (2d Cir. 2020)......................................................................................................3

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2d Cir. 2003)................................................................................20

*Veronica Foods Co. v. Ecklin*,
    2017 WL 2806706 (N.D. Cal. June 29, 2017) ..........................................................7

*Walsh v. Townsquare Media, Inc.*,
    464 F. Supp. 3d 570 (S.D.N.Y. 2020)......................................................... *passim*

*Wang v. Pataki*,
    396 F. Supp. 2d 446 (S.D.N.Y. 2005)......................................................................7

*Yang v. Mic Network, Inc.*,
    2022 WL 906513 (2d Cir. Mar. 29, 2022) ..............................................................14

*Yang v. Mic Networks, Inc.*,
    405 F. Supp. 3d 537 (S.D.N.Y. 2019)................................................15, 22, 25

**Federal Statutes**

17 U.S.C. § 107 ............................................................................................... *passim*

17 U.S.C. §§ 201-216 ..............................................................................1, 12, 15

17 U.S.C. § 505 ...................................................................................1, 2, 5, 25

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................5, 6

Fed. R. Civ. P. 12(c) ...................................................................................1, 5, 6

Federal Rules of Evidence 201(b)..............................................................21

Defendant Townsquare Media, Inc. ("Townsquare") respectfully submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and for attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PRELIMINARY STATEMENT

Plaintiff Delray Richardson ("Plaintiff"), the copyright holder in a video of Michael Jordan intervening in a fight in a nightclub (the "Jordan Video" or "Video 1"), and in a video interview of American rapper Melvin Glover, also known as Melle Mel (the "Melle Mel Video" or "Video 2") (together with the Jordan Video, the "Videos"), brings this action under the Copyright Act, seeking damages for and an injunction against Townsquare for embedding the Jordan Video and displaying a single-frame screenshot from it in an article about that video, and for embedding the Melle Mel Video and using single-frame screenshots from it in two articles about that video.

Plaintiff's claims suffer from three fatal defects: ***First***, the Melle Mel Video's creator posted it on the YouTube video sharing platform and thereby agreed to a license allowing third parties to display the video through embedding. And YouTube likewise granted Townsquare, as a user of its embedding function, a sublicense to display the Melle Mel Video. Because Plaintiff's claims arise precisely from this—Townsquare's embedding of the Melle Mel Video as posted to YouTube—they are based upon a licensed use and facially deficient. In short, Plaintiff's claim regarding the Melle Mel Video is not rooted in Townsquare's wrongdoing, but in its creator's decision to grant Townsquare a license by agreeing to YouTube's Terms of Service. Plaintiff cannot hold Townsquare liable for infringement when Townsquare's use of the Melle Mel Video was plainly licensed.

***Second***, Townsquare's use of the Jordan Video was fair use. The Video appeared as a social media post by the news blog DailyLoud that had been embedded into the Article. Even

1

assuming the DailyLoud did not have authority to the post the Video and thereby grant Townsquare a license to embed, the context of its post points clearly to a fair use finding:  The Article in which the video appeared was specifically about the hubbub the social media post of the video had created as it circulated years after the events recorded, and was accompanied by commentary from a public figure reportedly involved upon it.  Under these circumstances, which are apparent on the face of the pleadings and materials incorporated into them, fair use protects Townsquare's use as a matter of law.

*Finally*, the two single-frame screenshots from the Melle Mel Video and the single screenshot from the Jordan Video were included in the respective articles to alert readers to the subject of the news articles reporting on the Videos, and constituted a trivial fraction of their respective source material.  These screenshots thus constituted *de minimis* use, as well as fair use under the four-part test articulated in 17 U.S.C. § 107, and are therefore not actionable.

Accordingly, Plaintiff has failed to assert a valid claim for relief. This Court should enter judgment on the pleadings against Plaintiff and award Townsquare its fees and costs as the prevailing party pursuant to 17 U.S.C. § 505.

## FACTUAL BACKGROUND

### A.     The Parties

Townsquare is the owner of the hip-hop news and entertainment publication XXL, published at www.xxlmag.com ("XXL").  XXL publishes news relating to hip-hop, rap, R&B, and similar genres, including news and gossip about musical artists as well as music reviews. Plaintiff is a self-described "video journalist by trade" who purports to commercially license his videos. Dkt. 19 First Amended Complaint ("FAC") ¶ 11.

**B.    The Melle Mel Video**

Plaintiff's predecessor in interest, The Art of Dialogue, published the Melle Mel Video on or about March 2, 2023. FAC ¶ 16; Declaration of Celyra Myers ("Myers Decl.") Ex. B. [1] The Melle Mel Video depicts Melle Mel being interviewed by Plaintiff regarding his opinions on the state of rap music.  FAC ¶ 3; Myers Decl. Ex. B.  During this interview, Mel made disparaging comments about rapper Eminem, attributing his success to his race.  *Id.*

Due to the Melle Mel Video's subject matter (a hip-hop legend making racially disparaging remakes about another popular rapper), the Video became newsworthy and a matter of public interest as soon as it was posted.  Accordingly, on or about March 3, 2023, XXL published an article entitled "Melle Mel Thinks Eminem is Only Considered a Top Five Rapper Because Em's White" ("Article 1").[2]  FAC ¶ 35; Myers Decl. Ex. E.  Article 1 reported on Mel's comments about Eminem, as well as his prior commentary about the rapper made in 2017. Article 1 included one still image of the Melle Mel Video (the "Article 1 Screenshot"), and embedded the video from The Art of Dialogue's YouTube channel.[3]

---

[1] The YouTube video is also available https://youtu.be/h6bT2FNmjc0?si=vaQ2H9Z2lluM8LP4 (last visited October 18, 2024).  On a 12(c) motion the pleadings are "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *McKinley v. Crevatas*, 2022 WL 2066195, at *4 (S.D.N.Y. June 8, 2022) (internal quotations omitted). The Court may therefore consider Videos 1 and 2 on this 12(c) motion. *See also Bus. Casual Holdings, LLC v. TV-Novosti*, 2022 WL 784049, at *1 (S.D.N.Y. Mar. 14, 2022) ("the Court takes judicial notice of the copyrighted videos, which are relied on by, linked to in, and thereby incorporated into the Complaint")

[2] A complete copy of Article 1 is filed herewith as Exhibit E to the Myers Decl. Since Plaintiff has provided this Court with a portion of the Article as it appeared at the time this lawsuit was instituted, he has incorporated the full Article into his pleadings by reference. *See* FAC Ex. 2 (partial capture of Articles featuring the still images and the embedded videos). *See also Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020) ("We may properly consider the full contents of this article because it is incorporated by reference into the SAC.").

[3] "[A]n 'embedded' image is one that hyperlinks to a third-party website. To embed an image [or video], a coder or web designer adds an 'embed code' to the HTML instructions; this code directs the browser to the third-party server to retrieve the image [or video].  Thus, the image appears on the new page, but links to and remains hosted on the third-party server or website." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 577 n.4 (S.D.N.Y. 2020) (cleaned up).  The Court may take judicial notice of a full copy of the Article and the fact that the Article only embedded the Video. *See id.* at 579 (taking judicial notice of an article and the fact that it embedded a social media post) (citation omitted).

On or about March 5, 2023, XXL published a follow up article entitled "50 Cent Fires Back at Melle Mel for Saying Eminem is a Huge Success Because Em's White."  FAC ¶ 37; Myers Decl.  Ex. F ("Article 2").  Article 2 reported on rapper 50 Cent's newsworthy Instagram post shared in defense of Eminem's talent in  response to Mel's comments. *See* Myers Decl. Ex. F. Article 2 included one still image of the Melle Mel Video (the "Article 2 Screenshot) (together with the Article 1 Screenshot, the "Melle Mel Screenshots"), and again embedded the video from The Art of the Dialogue's YouTube channel.[4]

Plaintiff acquired the rights in the Melle Mel Video from The Art of Dialogue LLC via written assignment at some point after March 6, 2023, after it had been published to YouTube and after it had been embedded in Townsquare articles.  FAC ¶ 20.

## C.    The Jordan Video

Plaintiff published the Jordan Video on or about May 4, 2015. FAC ¶ 15. The Video is approximately forty-two seconds long and shows retired NBA basketball star Michael Jordan reportedly breaking up a fight between his bodyguard and rapper Wack 100. *Id.* ¶ 2; *Id.* Ex. 1.

Due to the Jordan Video's subject matter (a public fight involving a famous athlete), the Jordan Video went viral nearly eight years later, after the clip resurfaced in a post by the social media blog DailyLoud on X.com), and was immediately newsworthy.  *See* Myers Decl. Ex. A; Ex. D.  Because of the Jordan Video's circulation, a YouTube video creator named Charlston Wright, who had reportedly  been involved in the confrontation, made a public statement concerning the Jordan Video, further adding to the controversy the video had generated. Therefore, on or about July 24, 2023, XXL published an article entitled "Michael Jordan

---

[4] This Court may take judicial notice of full copies of Articles 1 and 2 and the fact that the articles only embedded a copy of the Melle Mel Video. *See Walsh.*, 464 F. Supp. 3d, at575, 577 n.1, n.4 (taking judicial notice of Article and the fact that it embedded a social media post). Plaintiff has provided this Court with a portion of Articles 1 and 2 as they appeared at the time this lawsuit was instituted *See* FAC Ex. 2 (partial capture of Articles featuring the still images and the embedded videos).

Intervenes in Heated Confrontation Involving Wack 100 in Viral Video From 2015 - Watch." ("Article 3"). FAC ¶ 33; *Id.* Ex. 2.  Article 3 reported on how the Jordan Video had recently been circulated by DailyLoud on Twitter, the speculation that Charleston White was an intended target in the fight, as well as White's response to that speculation.  It included one still image from the Jordan Video (the "Jordan Screenshot") (together with the Melle Mel Screenshot, the "Screenshots"), and embedded the DailyLoud X post including the Jordan Video. FAC ¶¶ 33-34; *Id.* Ex. 2.

**D.    Plaintiff's Claims**

Plaintiff commenced this action on June 3, 2024, alleging a single cause of action for copyright infringement arising from the use of the Jordan Video in Article 3.  *See* Dkt. 1 ¶¶ 53-62.  On September 4, 2024, Plaintiff filed his First Amended Complaint, which asserts the same single cause of action arising from Article 3, as well as additional alleged infringements arising from the use of the Melle Mel Video in Articles 1 and 2.  FAC ¶¶ 61-70.  Townsquare now moves for an entry of judgment on the pleadings against Plaintiff and awarding Townsquare its fees and costs pursuant to 17 U.S.C. § 505.

## ARGUMENT

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss, accepting all factual allegations in the [non-moving party's pleading] as true and drawing all reasonable inferences in the nonmoving party's favor."  *Walsh*, 464 F. Supp. 3d at 579 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) (internal quotation marks omitted).  Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact

remains to be resolved and that it is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings"). Thus, the standard for granting a Rule 12(c) motion for judgment on the pleadings "is identical to that [of] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (citation omitted).

On a Rule 12(c) motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). The complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks omitted).[5]  In considering the instant motion, the Court may take judicial notice of internet materials, specifically website Terms of Service.  *See Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (finding that Facebook's publicly available Terms of Service and Community Standards were subject to judicial notice); *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 600 n.2 (S.D.N.Y. 2020) (taking judicial notice of Instagram's Terms of Use); *Tatum v. X Corp.*, 2024 WL 2165338, at *3 (E.D.N.C. May 13, 2024) (taking judicial notice of X's Terms of Service for purposes of evaluating a motion to dismiss).

---

[5] Should the Court determine that relevant facts and materials are not sufficiently incorporated into the Complaint or that it cannot take judicial notice of them, the Court may convert the motion for judgment on the pleadings to one for summary judgment.  *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 672 (S.D.N.Y. 2016).  In that event, Defendants respectfully request that the Court permit Defendants to make further evidentiary submissions in support of a motion for summary judgment.

The Court may also take judicial notice of other publicly available web postings. *See Wang v. Pataki*, 396 F. Supp. 2d 446, 458 n.2 (S.D.N.Y. 2005); *Hotel Employees & Rest. Employees Union, Local 100 v. New York Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *4 (N.D. Cal. June 29, 2017) (taking judicial notice of the contents of a party's social media posts); *Moss v. Infinity Ins. Co.*, 2016 WL 7178559, at *3 (N.D. Cal. Dec. 9, 2016) (same). *See also Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), *aff'd*, 658 F. 3d 254 (2d Cir. 2011).

Here, the pleadings and materials incorporated therein and/or subject to judicial notice are sufficient for this Court to find as a matter of law that (1) the embedding of the Melle Mel Video in Articles 1 and 2 was authorized, providing Townsquare a complete defense to Plaintiff's claimed copyright infringement; (2) the embedding of the Jordan Video in Article 3 was fair use; and (3) the use of the Screenshots in Articles 1-3 was *de minimis* use and fair use due to the trivial amount used of the underlying video works and the context of news reporting upon those works. Accordingly, Plaintiff has failed to state a claim, and judgment should be entered in Defendant's favor.

## I.    TOWNSQUARE'S EMBEDDING OF THE MELLE MEL VIDEO WAS AUTHORIZED UNDER YOUTUBE'S TERMS OF SERVICE

Plaintiff's claim as to the embedded the Melle Mel Video in Articles 1 and 2 fails because this use was pursuant to a valid license under YouTube's Terms of Service.

A copyright owner who licenses rights in their work "waives any right to assert an infringement claim against the licensee, or anyone whom the licensee is entitled to sublicense, for acts within the scope of the license or sublicense." *Spinelli v. Nat'l Football League*, 96 F.

Supp. 3d 81, 121 (S.D.N.Y. 2015); *see also Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)

("A copyright owner who grants a nonexclusive license to use his copyrighted material waives

his right to sue the licensee for copyright infringement."); *Lasica v. America Online, Inc.*, 2015

WL 12791495, at *3 (C.D. Cal. Sept. 3, 2015) ("A copyright owner who grants a nonexclusive,

limited license ordinarily waives the right to sue licensees for copyright infringement, and it may

sue only for breach of contract.").   "This is because the 'licensee of any of the rights comprised

in the copyright, though it is capable of breaching the contractual obligations imposed on it by

the license, cannot be liable for infringing the copyright rights conveyed to it.'" *Ariel (UK) Ltd.

v. Reuters Grp. PLC*, 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006), (*quoting United States

Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991)), *aff'd*, 277 F. App'x 43

(2d Cir. 2008).

      "A defendant may raise a complete defense to a copyright infringement claim by

presenting the court with the license or sublicense on a motion to dismiss, and dismissal of a

claim for copyright infringement is proper where a contract underlying the suit clearly and

unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's

copyrights and where plaintiff has not shown any limitation on that license." *Spinelli*, 96 F.

Supp. 3d at 121 (cleaned up); *see also Ariel (UK) Ltd.*, 2006 WL 3161467, at *5, 10.  Courts

may find a license on a pleadings motion where "[t]he terms of the governing contracts are

clear."  *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 339 (S.D.N.Y. 2005).

      Courts in this circuit routinely find website terms of service agreements to be valid and

enforceable.  *See, e.g., Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012);

*Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  And YouTube has had its

own Terms of Service held to be enforceable in other contexts. *See, e.g.*, *See Song Fi, Inc. v.*

*Google Inc.*, 72 F. Supp. 3d 53, 59-61 (D.C. 2014) (finding YouTube's Terms of Service valid and enforceable); *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 714 (N.D. Cal. 2023) (summary judgment granted to YouTube on the basis of a license granted in its Terms of Service).

Here, the Melle Mel Video was uploaded by Plaintiff's predecessor in interest to the video sharing platform YouTube. *See* Myers Decl. Ex. C.  In uploading the Melle Mel Video, The Art of Dialogue agreed to YouTube's Terms of Service, *see* Myers Decl. Ex. G, through which it granted YouTube the right to sublicense the Video to third parties.  YouTube accordingly granted Townsquare a sublicense to embed the Melle Mel Video via the applicable Terms of Service.  These YouTube Terms are clear and enforceable.  Thus, because Townsquare embedded the Video via Plaintiff's YouTube post, its use of the Melle Mel Video was authorized under the YouTube Terms of Service sublicense.

A.    **YouTube's Terms of Service Grant a Clear and Unambiguous License**

Under the "Your Content and Conduct" section of the Terms of Service, the terms explicitly state that when user uploads their content to YouTube, they grant YouTube a broad license to the content including the right to reproduce, distribute, prepare derivative works of, display, perform, and importantly, to sublicense that content.  Specifically, the Terms of Use state:

> By providing Content to the Service, you grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates') business, including for the purpose of promoting and redistributing part or all of the Service.

Myers Decl. Ex. G at 8. *See also Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 885 (N.D.

Cal. 2023) (acknowledging grant of summary judgment to YouTube on a copyright claim on the

basis of this license provision).

In addition to granting a license to YouTube, those who upload Content to the platform

also grant a sublicense to YouTube's users. Specifically, the Terms of Service state:

> You also grant each other user of the Service a worldwide, non-
> exclusive, royalty-free license to access your Content through the
> Service, and to use that Content, including to reproduce, distribute,
> prepare derivative works, display, and perform it, only as enabled
> by a feature of the Service **(such as video playback or embeds).**
> For clarity, this license does not grant any rights or permissions for
> a user to make use of your Content independent of the Service.

Myers Decl. Ex. G at 9 (emphasis added).  Thus, when Art of Dialogue uploaded the Melle Mel

Video to YouTube, it granted YouTube "a worldwide, non-exclusive, royalty-free, sublicensable

and transferable license to use" the Melle Mel Video, *and* granted a license to other users of

YouTube's services—namely, Townsquare—to embed the video.  *Id.* at 8.  For avoidance of

doubt, YouTube itself also granted Townsquare a sublicense to embed the Melle Mel Video.

The Permissions and Restrictions section of the Terms state clearly "You may also show

YouTube videos through the embeddable YouTube player."  Thus, through the YouTube Terms

of Service, Townsquare had a license to embed the Video both from its creator, and from

YouTube.  This is a clear and unambiguous grant of permission authorizing Townsquare to make

use of the Melle Mel video in the manner it did.

In short, when The Art of Dialogue uploaded the Melle Mel Video to YouTube, it

granted the platform a broad license to the video, including the right to sub-license it to others,

which it exercised.  The Art of Dialogue also granted users like Townsquare the right to embed

its posted content.  Thus, Townsquare held a valid license to embed the Melle Mel Video.  Under

these circumstances, Plaintiff cannot state a claim for copyright infringement as to the Melle Mel Video.

## II.    TOWNSQUARE'S EMBEDDING OF THE JORDAN VIDEO WAS FAIR USE

Townsquare's embedding of the Jordan Video in its article reporting on the resurfacing of the video on social media is not actionable because it was fair use as a matter of law, and Plaintiff's claims arising from this use of the Jordan Video should be dismissed.

### A.    Courts in this Circuit Regularly Dismiss Copyright Claims at the Pleading Stage on Fair Use Grounds

Courts in this district have "resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." *Lombardo v. Dr. Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497, 504 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018).  Accordingly, numerous courts in this circuit have resolved fair use on a motion for judgment on the pleadings where the original work and alleged infringement are properly before the court, and discovery is not necessary to make a determination.  *See, e.g.*, *Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512, 527 (S.D.N.Y. 2015) (addressing fair use defense on a motion for judgment on the pleadings, reasoning that "[c]ourts in this Circuit have resolved motions to dismiss on fair use grounds in this way: comparing the original work to an alleged parody, in light of applicable law");  *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, 560 (S.D.N.Y. 2013) (resolving copyright infringement claim on motion for judgment on the pleadings by comparing screenplays side-by-side); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 86 (2d Cir. 2014) (affirming district court's pre-discovery fair use ruling and noting that the "discovery [plaintiff] seeks would not alter our analysis").[6]

---

[6] *See also August Image, LLC v. Girard Ent. & Media LLC*, 2024 WL 1375480 at *6 (S.D.N.Y. Apr. 1, 2024), *appeal filed,* No. 24-994 Apr. 16, 2024; *Sketchworks Indus. Strength Comedy, Inc. v. Jacobs*, 2022 WL 1501024, at *9-10 (S.D.N.Y. May 12, 2022).

Indeed, early resolution of meritless cases plays an important role in furthering the purposes of the Copyright Act. As the Ninth Circuit observed in *SOFA Entertainment, Inc. v. Dodger Productions, Inc.*, "lawsuits of this nature . . . have a chilling effect on creativity insofar as they discourage the fair use of existing works in the creation of new ones." 709 F.3d 1273, 1280 (9th Cir. 2013). That chilling effect is of special concern given the recent proliferation of copyright "strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement." *Sands v. Bauer Media Group USA, LLC*, 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019). Early dispositive motions are critical procedural safeguards against strike suits, ensuring that plaintiffs cannot "extort settlements" in meritless cases by leveraging the threat of substantial discovery costs. If left unchecked, such gaming of the system will discourage legitimate fair use, frustrating the core purposes of the doctrine.

Here, the Court does not need to consider anything beyond the work at issue and the context in which it was published—the Jordan Video and Article 3—to make a determination as to fair use on this motion.

**B.    Townsquare's Use of the Jordan Video Was Fair Use**

The Copyright Act's fair use provision, 17 U.S.C. § 107, provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, . . . scholarship, or research, is not an infringement of copyright." *Id.* Section 107 lists four non-exclusive factors to consider in determining whether a particular use of a copyrighted work is a fair use:

(1)    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)    the nature of the copyrighted work;

(3)    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)     the effect of the use upon the potential market for or value of the copyrighted work.

*Id*.  The four factors must be considered together, and none may be "treated in isolation." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).  Moreover, "[a]lthough defendants bear the burden of proving that their use was fair, they need not establish that each of the factors set forth in § 107 weighs in their favor."  *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476–77 (2d Cir. 2004) (internal citation omitted).

The fair use doctrine protects "the ability of authors, artists, and the rest of us to express them — or ourselves by reference to the works of others, which must be protected up to a point." *Blanch v. Koons,* 467 F.3d 244, 250 (2d Cir. 2006).  Put simply, the fair use defense allows for the use of copyrighted material in a reasonable manner for the purpose of disseminating information without the copyright owner's consent.  *See Cariou v. Prince,* 714 F.3d 694, 705 (2d Cir. 2013).

Here, Defendant's use of the Jordan Video not only falls within one of the enumerated favored fair use categories—news reporting—but all four factors also weigh in favor of fair use as a matter of law.

## 1.     The Purpose and Character of Townsquare's Use

The first fair use factor "considers the reasons for, and nature of, the copier's use of an original work."  *Andy Warhol Found. For the Visual Arts v. Goldsmith*, 598 U.S. 508, 528 (2023).  "A use that has a further purpose or different character is said to be 'transformative.'" *Id.* at 529 (*quoting Campbell*, 510 U.S. at 579).  The first factor, at its heart, "asks 'whether and to what extent' the use at issue has a purpose or character different from the original.  The larger the difference, the more likely the first factor weighs in favor of fair use."  *Id.* (citation omitted).

The Court's analysis under the first factor is to be "guided by the examples given to the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like." *Campbell*, 510 U.S. at 578-79.  The Second Circuit has held that "the case for a fair use defense [is] extremely strong" where a news report uses a copyrighted work to comment on its significance. *Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 79 (2d Cir. 1997).  Consequently, a defendant may fairly include a copyrighted work in a news article where the plaintiff's work "is itself the subject of the story, transforming the function of the work in the new context." *Walsh,* 464 F. Supp. 3d at 581 (finding fair use to embed a celebrity's social media post that incorporated one of plaintiff's photographs). *See also Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 534 (S.D.N.Y. 2018) (use of photograph was fair because the photograph was the main subject of an article providing commentary on the photo itself); *Yang v. Mic Network, Inc.*, 2022 WL 906513, at *2 (2d Cir. Mar. 29, 2022) (affirming dismissal of infringement claim from use of plaintiff's photo that had appeared on the cover of the New York Post because the defendant was using the image to "provide [the defendant's] own commentary" on and "criticism of the Post article"); *Barcroft Media, Ltd. v. Coed Media Grp*., LLC, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("a news report about a video that has gone viral on the internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about").

Here, Townsquare embedded the original DailyLoud post with the Jordan Video that had caused the hubbub and drawn attention to the interaction years after it occurred, reported directly upon the contents of the Video, and provided additional context on the reaction of someone allegedly involved in the altercation to the Video's sudden virality.  Thus, Townsquare featured the Video specifically "to illustrate what all the fuss is about." *Walsh,* 464 F. Supp. 3d at 581;

*Yang v. Mic Networks, Inc.,* 405 F. Supp. 3d 537, 543 (S.D.N.Y. 2019) ("Using a portion of an original work to identify and inform viewers about the subject of a controversy can constitute transformative use"); *August Image,*, 2024 WL 1375480, at \*4 (use of a screenshot of *Friends* actor David Schwimmer's social media post prominently featuring the plaintiff's photograph was fair use given the context of reporting on the social media post, and dismissing).[7]

### 2.      The Nature of the Videos

In analyzing the nature of the copyrighted work, courts consider: (1) whether the work is published or unpublished—with greater fair use protection given to unpublished works; and (2) whether the work is creative or factual—with greater fair use protection given to factual works. *See Blanch*, 467 F.3d at 256. Here, both elements under the second factor support fair use.

First, that Plaintiff's works were published is not in dispute. *See* FAC ¶¶ 15, 18. The Jordan Video went viral after being shared by the DailyLoud on X.com. *See* Myers Decl. Ex. D. This broad publication favors a finding of fair use. *See Walsh*, 464 F. Supp. 3d at 585 (because paparazzi-style photograph "was previously published by Cardi B on her Instagram" second factor favors fair use finding); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (holding that second factor favored fair use because work was "a published work available to the general public"); *Bill Graham Archives, LLC. v. Dorling Kindersley Ltd.*, 386 F. Supp. 2d 324, 330 (S.D.N.Y. 2005) ("This circuit has mitigated the importance of creativity in the second factor where a work is a published work available to the general public" (citation and internal quotation marks omitted)), *aff'd sub nom.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448

---

[7] While the Complaint alleges that Townsquare is a "lucrative commercial enterprise," it is well-established in the Second Circuit that a defendant's status as a for-profit enterprise is not a dispositive factor in evaluating the purpose and character of the defendant's use. *See Swatch Group*, 756 F.3d at 81-83 ("purposes such as . . . news reporting" are set forth in the Copyright Act as prototypical examples of fair use, 17 U.S.C. § 107, and the Second Circuit has "recognized that almost all newspapers, books and magazines are published by commercial enterprises that seek a profit") (citation omitted).

F.3d 605 (2d Cir. 2006); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007) (where work appeared on the Internet before a defendant copies it, this strengthens a finding of fair use).

Second, and importantly, the Jordan Video primarily served an informational purpose. Courts have found that depictions of real events, like those at issue here, are more factual than creative—even when professional photographers took the images. *See, e.g., Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("There is a public interest in receiving information concerning the world in which we live. The more newsworthy the person or event depicted, the greater the concern that too narrow a view of the fair use defense will deprive the public of significant information."); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 430 (S.D.N.Y. 2018) (holding that second factor favored fair use where smartphone photograph at party "was spontaneously taken to document its subjects, as they were in the moment"); *North Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015) ("Courts analyzing . . . photographic works created for news gathering or other non-artistic purposes have found this factor to weigh in favor of fair use."); *Barcroft Media*, 297 F. Supp. 3d at 354 ("Although photography, including photography of a celebrity walking around in public, certainly involves skill and is not devoid of expressive merit, the [paparazzi] images are further from the core of copyright protections than creative or fictional works would be."); *Schwartzwald v. Oath, Inc.*, 2020 WL 5441291, at *7 (S.D.N.Y. Sept. 10, 2020) (finding paparazzi photo at issue more factual in nature where Plaintiff appears to have captured subject and his female companion "as they naturally appeared" without altering their poses or staging their surrounding environment).

The Jordan Video is a grainy, shaky, handheld video, which was taken to capture real-life events in which Plaintiff had no role—a fight in a nightclub—rather than to further any expressive purpose. The interest in the Jordan Video likewise derives entirely from the events it captures, not from its creativity. The second factor, therefore, weighs in favor of fair use.

### 3.        The Amount and Substantiality of the Use

The third fair use factor considers not only 'the quantity of the materials used' but also 'their quality and importance' in relation to the original work. *TCA TV Corp. v. McCollum*, 839 F.3d 168, 185 (2d Cir. 2016) (*quoting Campbell*, 510 U.S. at 587).

Courts have found that copying the entire work does not necessarily weigh against fair use "because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham Archives*, 448 F.3d at 613 (finding fair use despite entire copying where whole images were necessary to portray historical artifacts); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 861 F. Supp. 2d 336, 342 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 17 (2d Cir. 2014), *and aff'd*, 756 F.3d 73 (2d Cir. 2014) (fair use to include the entirety of a copyrighted earnings call recording in a news article about that call); *Marano v. Metropolitan Museum of Art*, 844 F. App'x 436, 439 (2d Cir. 2021) (fair use to include a complete copy of plaintiff's photograph in connection with fair use for a transformative purpose), *cert denied,* 142 S. Ct. 213 (2021). Townsquare's use of the Jordan Video in its entirety was necessary because it could not embed the DailyLoud post—the post that had led to a sudden interest in the Jordan Video—without including the Jordan Video itself.

Because Townsquare's use of the entire Jordan Video was qualitatively important to its reporting on the viral DailyLoud post, this factor favors fair use.

4.        **The Effect of the Use Upon the Potential Market**

The fourth factor focuses "on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d. Cir. 2014), *cert denied,* 578 U.S. 941 (2016). The central inquiry is whether the secondary use "usurps the market of the original work." *Blanch*, 467 F.3d at 258 (citation omitted); *see Cariou*, 714 F.3d at 708 ("[O]ur concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use *usurps* the market of the original work" (emphasis in original)).

The first and fourth factors are closely linked, as "the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Authors Guild,* 804 F.3d at 223 (*citing Campbell*, 510 U.S. at 591). Where, as here, a use is clearly transformative, courts consistently hold that the copyright owner "does not suffer market harm due to the loss of license fees." *Bill Graham Archives*, 448 F.3d at 615. Moreover, centering potential lost license fees in the context of transformative use disregards the obvious point that a copyright plaintiff "is not entitled to a licensing fee for a work that otherwise qualifies for the fair use defense." *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116-17 (2d Cir. 1998).

Any argument that the embedded Jordan Video used in Article 3 could serve as a market substitute for the video itself is without legs. Objectively, there is no possibility that an entity seeking to license the Jordan Video for its own purposes would instead settle for a website with an embedded copy of the Video from a different entity's X.com post. As noted by the court in *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 198 (S.D.N.Y. 2021), "[a] news

18

article about a viral video is unlikely to threaten to 'deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original.'" (quoting *Authors Guild*, 804 F.3d at 223); *see also Walsh*, 464 F. Supp. 3d at 586 (finding no harm to the licensing market where a photograph appeared as part of a post alongside text and other images).  Moreover, Plaintiff has not alleged that Townsquare's embedding of the DailyLoud post, if widespread, would result in market harm.  First, if Plaintiff did not authorize the DailyLoud post, he can demand its removal, and it would thereafter no longer appear on Townsquare's website by virtue of how embedding works.  Second, Plaintiff has not sufficiently alleged that a licensing market exists for this work, since he has not cited any specific instance of having licensed it to a third party.  *Cf. Nicklen*, 551 F. Supp. 3d at 198 (finding potential market harm where plaintiff alleged he "licensed the Video to 'almost two dozen entities both in the United States and throughout the world'").

In short, because Townsquare's Article recontextualizes the Jordan Video and serves a different purpose, because the nature of embedding makes any contention of market harm as to an embed implausible, and because Plaintiff has not alleged any specific market harm, the fourth factor weighs in Townsquare's favor.

* * *

In sum, all four statutory factors weigh in favor of a finding of fair use.  Townsquare made transformative use of a viral video in a manner that could not plausibly have any impact on the market for the Jordan Video.  Plaintiff's claim based upon the Jordan Video may be dismissed on these grounds.

### III.    TOWNSQUARE'S USES OF THE SCREENSHOTS FROM THE MELLE MEL VIDEO AND JORDAN VIDEO WERE NOT ACTIONABLE

Townsquare's use of a single-frame screenshot from the Melle Mel Video in each of its two articles reporting on that video, and its similar use of a single-frame screenshot from the Jordan Video in its article reporting on that video, were not actionable because these trivial uses constituted *de minimis* use as well as fair use as a matter of law.

### A.    Townsquare's Use of Two Screenshots Was *De Minimis* Use

Townsquare's use of single-frame screengrabs taken from Plaintiff's Videos constituted quintessential *de minimis* use and were therefore not actionable. For Plaintiff to succeed on his claim of copyright infringement as to the Screenshots, Plaintiff must prove that (1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar. *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003).  To prove substantial similarity, a plaintiff must show, among other things, "that the amount that was copied is more than de minimis." *Id.* (*quoting Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137-38 (2d Cir. 1998)).

The *de minimis* use doctrine provides that "if the copying is ... so 'trivial' as to fall below the quantitative threshold of substantial similarity, the copying is not actionable." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008); *see also Ringgold,* 126 F.3d at 74 ("*de minimis* can mean that copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying").  "When visual works are at issue and (as here) are attached to the pleadings or otherwise cognizable on a motion to dismiss, as is the case here, the Court must determine whether a reasonable jury could find substantial similarity based upon a comparison of the two works." *Rudkowski*, v. *Mic Network, Inc.*, 2018 WL 1801307, at *3

(S.D.N.Y. Mar. 23, 2018) (*quoting Hirsch v. CBS Broad. Inc.*, 2017 WL 3393845, at *4

(S.D.N.Y. Aug. 4, 2017) (addressing *de minimis* argument on motion to dismiss).

      Courts consistently find the use of a single screenshot from a video that was posted on

social media to be "trivial and *de minimis* for sure."  *Konangataa v. American Broad. Cos., Inc.*,

2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017).  *See also Rudkowski*, 2018 WL 1801307, at

*4 (dismissing claim based on use of a still-frame from a video was "trivial" and, therefore,

constituted a *de minimis* use).  This is because a single-frame screenshot represents a small

fraction of any video work.  Videos have a standard frame rate of 24 frames per second,[8]

meaning that the forty-two second Jordan Video has over one thousand possible single-frame

screenshots, and the three-minute-and-six second Melle Mel Video has 4,464.  Moreover, video

screenshots are by definition not moving images, meaning they lack the essential defining quality

of the original work.  *See Gordon v. McGinley*, 2011 WL 3648606, at *6 (S.D.N.Y. Aug. 18,

2011) (summary order) (noting that the "allegedly infringing [image] is derived from a wholly

dissimilar and dynamic medium, in which camera angles, lighting, and focus are changing at a

rate of 29.4 frames per second"), *aff'd in relevant part*, 502 F. App'x 89 (2d Cir. 2012).

      Indeed, this case is factually indistinguishable from *Rudkowski* and *Konangataa*, both of

which held a screenshot from a video was *de minimus* and not actionable.  *Rudkowski* concerned

the inclusion of a screenshot of plaintiff's video in an article published by defendant about the

subject of the video—student protests on Berkeley's campus.  *Rudkowski*, 2018 WL 1801307, at

*1.  *Konangataa*, similarly, concerned defendant news outlet's inclusion of a single screenshot

from plaintiff's live stream of her baby's birth in an article commenting on the phenomenon of

live-streaming personal life events.  *Konangataa*, 2017 WL 2684067, at *2.  Just as in these

---

[8] Under Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

cases, Townsquare used single screenshots of Plaintiff's Videos that were posted on social media to report on the Video. FAC Ex. 2.  And, here, like in *Rudkowski* and *Konangataa*, the claim as to the Screenshots should be dismissed as a matter of law because no reasonable factfinder could conclude that the Screenshots constitute anything more than trivial portions of the Videos.

**B.      Townsquare's Use of the Screenshots Was Fair Use**

Even if Townsquare's use of the Melle Mel and Jordan Video screenshots was not protected by the *de minimis* use doctrine, and it certainly was, the use of the Screenshots was fair. Here, Defendant's use of the Screenshots was for the purpose of news reporting, a favored fair use category, and all four of the factors weigh in favor of fair use as a matter of law.

**1.      The Purpose and Character of Townsquare's Use**

As discussed above, this factor "considers the reasons for, and nature of, the copier's use of an original work."  *Andy Warhol Found.*, 598 U.S. at 528. This factor heavily favors fair use where the media, in service of news reporting, uses the work "to illustrate what all the fuss is about." *Walsh*, 464 F. Supp. 3d at 581; *Yang*, 405 F. Supp. 3d at 543

Here, Townsquare used the Screenshots in connection with three articles  that commented upon the Videos themselves, and the public response to them, in order to alert readers as to what the "fuss was all about"—in line with what courts in the Second Circuit have deemed a strong fair use. *See Walsh*, 464 F. Supp. 3d at 581; *Barcroft* 297 F. Supp. 3d at 352.  But most critically, the Screenshots do not—and cannot—serve the same purpose as the Videos themselves.  First, the still image from the Jordan Video does not, for example, show the exchange that precipitated the altercation, the response of party goers to the commotion, bystanders, including Michael Jordan, attempting to calm Wack 100, or the physical intervention Jordan eventually performed.  Instead, the screenshot simply shows Michael Jordan looking on as the altercation unfolds, in a static image devoid of context, to alert readers to the existence of

the Video. The still images of the Melle Mel Video similarly show Melle Mel sitting in a chair as he is interviewed, and does not include any of the conversation being had, much less the controversial comments that precipitated Articles 1 and 2.

Since Townsquare's limited use of the Screenshots was transformative in both character and purpose of the Videos, the first factor weighs strongly in favor of fair use.

### 2.    The Nature of the Videos

The second factor also supports fair use.  First, that Plaintiff's works were published is not in dispute.  *See* FAC ¶¶ 15, 18. The Jordan Video went viral after being shared by the DailyLoud on X.com, and the Melle Mel Video was published by its creator through uploading it to YouTube, where it has received at least 133,687 views.  *See* Myers Decl. Exs. C-D. This broad publication favors a finding of fair use.  *See Walsh*, 464 F. Supp. 3d at 585.

Second, the Videos primarily served an informational purpose.  Courts have found that "[t]he more newsworthy the person or event depicted, the greater the concern that too narrow a view of the fair use defense will deprive the public of significant information." *Monster Commc'ns*, 935 F. Supp. at 494; *Otto*, 345 F. Supp. 3d at 430.  The second factor thus weighs neutrally, at best.

### 3.    The Amount and Substantiality of the Use

The third fair use factor considers "not only 'the quantity of the materials used' but also 'their quality and importance'" in relation to the original work.  *TCA TV*, 839 F.3d at 185 (*quoting Campbell*, 510 U.S. at 587).  "[T]he extent of permissible copying varies with the purpose and character of the use," *Campbell*, 510 U.S. at 586-87; and the defendant "must be [permitted] to 'conjure up' at least enough of the original to fulfill its transformative purpose." *Cariou*, 714 F.3d at 710.

Townsquare could hardly have used less of the Videos when it created the Screenshots. The Screenshots represent single frames of 1,008-frame the Jordan Video and 4,464-frame the Melle Mel Video.  Thus, the Screenshots represented tiny fractions—approximately 0.099% and 0.022%—of the Videos, respectively. Courts have found the third factor favored significantly larger portions of video works. *See, e.g.*, *SOFA*, 709 F.3d at 1279 (seven second clip from Ed Sullivan show used to set a historical marker was "hardly qualitatively significant"); *Monster Commc'ns*, 935 F. Supp. at 495 (use of 41 seconds total of boxing match footage in biographical film about Muhammed Ali was, "[f]rom any quantitative standpoint, . . . small"); *Nat'l Center for Jewish Film v. Riverside Films, LLC*, 2012 WL 4052111, at *5 (C.D. Cal.  Sept. 14, 2012) (use of clips totaling between .6%-1.5% of three of plaintiff's works were "minimal—both quantitatively and qualitatively"); *Fuentes v. Mega Media Hldgs*, 2011 WL 2601356, at *9-10, *15 (S.D. Fla. June 9, 2011) (finding fair use of sixty-seven minutes, or ten percent, of raw footage).

Nor are the Screenshots qualitatively significant in light of the Videos in their entirety. As noted above, the Screenshots fail to capture *any* of the lead-up to or aftermath of the single moments captured, nor do they capture the other moments of action featured in the Videos. Context, movement, and sound comprise the creative heart of any video.  These are precisely what the Screenshots omit.  The third factor consequently favors fair use.

### 4.    The Effect of the Use Upon the Potential Market

The fourth factor focuses "on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original."  *Authors Guild*, 804 F.3d at 223.  Any argument that the Screenshots used in the Articles could serve as market substitutes for the Videos would be laughable.  Any

entity seeking to license the Videos would not accept low resolution stills of single static frames, nor could the market for the Video be harmed by the widespread use of single static frame. Courts consistently find that in similar circumstances, where the defendant uses only a limited, low-resolution portion of the underlying work, that this fourth factor weighs in favor of fair use. *See Harbus v. Manhattan Inst. for Policy Research, Inc.,* 2020 WL 1990866, at *8 (S.D.N.Y. Apr. 27, 2020)  ("[I]t is implausible that potential buyers would opt to license the [defendant's] significantly cropped and darkened version of the Photograph . . . rather than the original Photograph . . . ."); *Yang*, 405 F. Supp. 3d at 548 ("In light of the cropped and composite manner in which the Mic Article presents the Photograph, it is implausible that potential purchasers would opt to use the Screenshot rather than license the original Photograph").  Similarly, under the circumstances here, Defendant's use of the low-resolution Screenshots in the Articles cannot be considered valid market substitutes for the Videos under any reasonable analysis. Accordingly, factor four favors a finding of fair use.

* * *

In sum, the four statutory factors weigh in favor of a finding of fair use.  Townsquare made transformative use of a negligible portion of the widely available Videos in a manner that could not plausibly have any impact on the market for them.  Plaintiff's claims based upon the Screenshots may be dismissed on these grounds.

## **CONCLUSION**

For the foregoing reasons, Townsquare respectfully requests that the Court enter judgment on the pleadings in favor of Defendant, dismiss the FAC in its entirety with prejudice, and award Townsquare its attorneys' fees and costs as the prevailing party under 17 U.S.C. § 505.

Dated: October 18, 2024
New York, New York

                         Respectfully submitted,

                  **DAVIS WRIGHT TREMAINE LLP**

                  By: _/s/ Rachel F. Strom_
                  Rachel F. Strom
                  Abigail B. Everdell
                  Celyra I. Myers
                  1251 Avenue of the Americas, 21st Floor
                  New York, NY  10020-1104
                  (212) 489-8230 Phone
                  (212) 489-8340 Fax

                  _Attorneys for Defendant Townsquare Media, Inc._