**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DELRAY RICHARDSON,

                Plaintiff,

       v.

TOWNSQUARE MEDIA, INC.,

          Defendant.

Case No. 1:24-cv-04217-AKH

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION FOR
<u>JUDGEMENT ON THE PLEADINGS</u>**

**SANDERS LAW GROUP**
Jaymie Sabilia-Heffert, Esq.
Craig B. Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, New York 11553
Tel: 516-203-7600
Fax: 516-282-7878
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................... 4

STANDARD OF REVIEW ................................................................................. 5

ARGUMENT ....................................................................................................... 6

   I.   YOUTUBE'S TOS DO NOT AUTHORIZE DEFENDANT'S USE OF PLAINTIFF'S VIDEO AND RAISES OBJECTIONS OF FACT NOT RESOLVABLE ON A MOTION TO DISMISS .................................................................................. 6

      A.   YOUTUBE'S TOS ARE AMBIGUOUS AND CONTAIN CONFLICTING LANGUAGE ....... 6

      B.   DEFENDANT CANNOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT ITS USAGE WAS LICENSED ................................................................................. 9

   II.  DEFENDANT HAS FAILED TO ESTABLISH FAIR USE ................................................ 9

      A.   DEFENDANT'S FAIR USE ARGUMENT IS PREMATURE ............................... 10

      B.   THE APPLICABLE FACTORS DO NOT FAVOR A FINDING THAT DEFENDANT'S SECONDARY USE WAS FAIR ......................................................................... 11

      a.   THE FIRST FAIR USE FACTOR WEIGHS HEAVILY AGAINST DEFENDANT ............. 12

      i.   DEFENDANT FAILED TO TRANSFORM THE ORIGINAL PURPOSE OF THE VIDEO .... 13

      ii.   DEFENDANT USED VIDEO 1 AS AN "ILLUSTRATIVE AID" TO REPORT ON THE CONTENT DEPICTED IN THE VIDEO ............................................................... 15

      iii.   DEFENDANT'S SECONDARY USE WAS COMMERCIAL ............................... 18

      b.   THE SECOND FAIR USE FACTOR DOES NOT FAVOR DEFENDANT ...................... 19

      c.   THE THIRD FAIR USE FACTOR DOES NOT FAVOR DEFENDANT ........................ 20

      d.   WITH RESPECT TO THE FOURTH FACTOR, DEFENDANT'S SECONDARY USES NEGATIVELY IMPACT THE MARKET FOR PLAINTIFF'S VIDEO ........................... 21

   III. DEFENDANT'S USE OF THE VIDEO IMAGES ARE ACTIONABLE ................. 23

  A.   DEFENDANT'S USE OF THE VIDEO IMAGES WAS NOT *DE MINIMIS* ................................. 23

  B.   THE APPLICABLE FACTORS DO NOT FAVOR A FINDING THAT DEFENDANT'S SECONDARY USE OF THE VIDEO IMAGES WAS FAIR ....................................................... 25

      A.   THE FIRST FAIR USE FACTOR WEIGHS HEAVILY AGAINST DEFENDANT ........... 25

      B.   THE SECOND FAIR USE FACTOR DOES NOT FAVOR DEFENDANT ...................... 25

      C.   THE THIRD FAIR USE FACTOR DOES NOT FAVOR DEFENDANT ........................ 26

      D.   THE FOURTH FAIR USE FACTOR FAVORS PLAINTIFF ................................. 27

**CONCLUSION** ................................................................................................................. **28**

## TABLE OF AUTHORITIES

**Cases**

*Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith,*
598 U.S. 508, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023) ........................................... 10, 11, 24

*Associated Press v. Meltwater U.S. Holdings,*
931 F.Supp.2d 537 (S.D.N.Y. 2013).................................................................... 13, 18

*Authors Guild v. Google, Inc.,* 804 F.3d 202, 220 (2d Cir. 2015), *cert. denied,* 136 S. Ct.
1658 (2016) ................................................................................................ 17, 19 25

*Barcroft Media, Ltd. v. Coed Media Grp., LLC,*
297 F. Supp. 3d 339 (S.D.N.Y. 2017).................................................................... 12

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
448 F.3d 605 (2d Cir. 2006)................................................................................ 21

*Blanch v. Koons,*
467 F.3d 244 (2d Cir. 2006)................................................................................ 18, 19

BWP Media USA*, Inc. v. Gossip Cop Media, Inc.,* 196 F. Supp. 3d 395 (S.D.N.Y. 2016)......... 14

*Campbell v. Acuff-Rose Music, Inc.,*
510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) ..................................... 16, 18, 19, 22

*Castle Rock Ent., Inc. v. Carol Pub. Group, Inc.,*
150 F.3d 132 (2d Cir. 1998 ................................................................................ 17

*Cruz v. Cox Media Grp., LLC,*
444 F. Supp. 3d 457 (E.D.N.Y. 2020) .................................................................. 15

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.,* 933
F.3d 751, 761 (D.C. Cir. 2019) .......................................................................... 6

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
983 F.3d 443 (9th Cir. 2020)................................................................................ 22

*Dyer v. V.P. Records Retail Outlet, Inc.,* 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008 ..... 24

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ........................................ 6

*Ferdman v. CBS Interactive Inc.,*
342 F.Supp.3d 515 (S.D.N.Y. September 24, 2018).............................................. 16

*Fox News Network, LLC v. TVEyes, Inc.,*
883 F.3d 169 (2d Cir. 2018)................................................................................ 22

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) ................................................................................ 11

*Graham v. Prince*,
    No. 15-CV-10160 (SHS), 2023 WL 3383029 (S.D.N.Y. May 11, 2023) ................................ 9

*Grant v. Trump*,
    563 F. Supp. 3d 278 (S.D.N.Y. 2021) ................................................................ 10

*Hachette Book Grp., Inc. v. Internet Archive*,
    No. 20-CV-4160 (JGK), 2023 WL 2623787 (S.D.N.Y. Mar. 24, 2023) ................................ 12

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ........................................................................ 14, 18, 20

*Hayden v. Koons*,
    2022 WL 2819364 (S.D.N.Y. July 18, 2022) ................................................ 10, 11, 22, 28

*Hirsch v. Complex Media, Inc.*,
    No. 18-cv-5488 (CM), 2018 WL 6985227 (S.D.N.Y., December 10, 2018) ........................ 15

*Hudson Furniture, Inc. v. Mizrahi*,
    No. 120CIV04891PAC, 2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023) .............................. 21

*Infinity Broadcast Corp. v. Kirkwood*,
    150 F.3d 104 (2d Cir. 1998) .......................................................... 13, 20, 22

*Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) ...................................................... 5

*Kienitz v. Sconnie Nation LLC*,
    766 F.3d 756 (7th Cir. 2014) ........................................................................ 20

*Kleinman v. Elan Corp., plc*,
    706 F.3d 145 (2d Cir. 2013) .......................................................................... 6

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir. 1995) .......................................................................... 23

*Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) ................................ 5

*Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ............................................ 5

*Lynk Media, LLC v. Peacock TV LLC*,
    No. 23-CV-5845 (JGK), 2024 WL 2057235 (S.D.N.Y. May 8, 2024) .......................... 14, 16

*Mattel, Inc.*, 2021 WL 2292918, at *6. .............................................................. 27

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) .......................................................................... 6

*McGucken v. Newsweek LLC*,
    464 F. Supp. 3d 594 (S.D.N.Y. 2020); *reconsideration denied*, No. 19 CIV. 9617
    (KPF), 2020 WL 6135733 (S.D.N.Y. Oct. 19, 2020) .......................................... 15, 17, 19, 26

*McGucken v. Newsweek LLC*,
    No. 19 CIV. 9617 (KPF), 2022 WL 836786 (S.D.N.Y. Mar. 21, 2022) ................................... 7

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,*166 F.3d 65, 71–72 (2d Cir. 1999) . 24, 26

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480 (2d Cir. 2004).................................................... 20

*Pacheco v. Chickpea at 14th St. Inc.*,
    No. 18CV251JMFGWG, 2019 WL 6683826, at *2 (S.D.N.Y. Dec. 6, 2019) ....................... 10

*Psihoyos v. Nat'l Exam'r*,
    No. 97 CIV. 7624 (JSM), 1998 WL 336655 (S.D.N.Y. June 22, 1998)............... 12, 15, 21, 27

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*,
    10 F.Supp.2d 310, 314 (S.D.N.Y. 1998)................................................................................. 18

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997)...................................................................................................... 23

*Rogers*, 960 F.2d at 311 .............................................................................................................. 20

*Sands v. What's Trending, Inc.*,
    No. 20-CV-2735 (GBD) (KHP), 2021 WL 694382 (S.D.N.Y. Feb. 23, 2021) ...................... 15

*Shihab v. Source Digital, Inc.*,
    2024 WL 3461351 (S.D.N.Y. July 18, 2024) ......................................................................... 10

*Sinclair v. Ziff Davis, LLC*,
    No. 18-CV-790 (KMW), 2020 WL 3450136 (S.D.N.Y. June 24, 2020)............................. 7, 9

*Sohm v. Scholastic Inc.*,
    959 F.3d 39 (2d Cir. 2020)........................................................................................................ 7

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ............................... 4

*Swatch Group Management Services Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir, 2014)...................................................................................................... 14

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016).................................................................................................... 11

*United States v. Am. Soc. of Composers Authors & Publishers*,
    599 F.Supp.2d 415 (S.D.N.Y. 2009)....................................................................................... 18

*Walsh v. Townsquare,*
    464 F. Supp.3d 570 (S.D.N.Y., June 1, 2020) ........................................................ 17

Whiteside v. Hover-Davis, Inc.,
    995 F.3d 315 (2d Cir. 2021) ................................................................................... 11

*Wright v. Warner Books, Inc.,*
    953 F.2d 731 (2d Cir. 1991) ................................................................................... 21

*Yang v. Mic Network Inc.,*
    No. 20-4097-CV, 2022 WL 906513 (2d Cir. Mar. 29, 2022) .................................. 12

**Statutes**

17 U.S.C. § 101 ............................................................................................................. 1

17 U.S.C. § 106(5) ..................................................................................................... 23

17 U.S.C. § 107 ........................................................................................................... 12

17 U.S.C. § 107(2) ..................................................................................................... 19

17 U.S.C. § 107(3) ..................................................................................................... 20

17 U.S.C. § 107(4) ................................................................................................ 21, 27

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1

Rule 12(b)(6) ................................................................................................................. 6


**Constitutional Provisions**

U.S. Const., Art. I, § 8, cl. 8 ...................................................................................... 17

Plaintiff Delray Richardson ("*Plaintiff*"), by and through his undersigned attorneys, respectfully submits the following memorandum of law in opposition to the Fed. R. Civ. P. 12(c) motion for judgment on the pleadings as to Plaintiff's First Amended Complaint ("*FAC*") filed by defendant Townsquare Media, Inc. ("*Defendant*").

## PRELIMINARY STATEMENT

This action seeks to recover damages for copyright infringement under the Copyright Act (17 U.S.C. § 101, *et seq*.). Plaintiff commenced this case upon discovering that Defendant had unlawfully appropriated his copyright-protected videos and published same in articles on its website for its own commercial purposes and financial gain. Defendant does not deny having commercially displayed the videos without license or permission from Plaintiff, but nonetheless argues that the claims should be dismissed for three reasons: (a) sub-license; (b) fair use; and (c) *de minimis* use. In this regard, Defendant is asking the Court to grant judgment in its favor on its affirmative defenses, on which it bears the burden of proof. This, despite there being no affirmative defenses proven and no discovery or evidentiary record. Fatal to the motion, however, is that Defendant conflates its belief that it may be able to prove its affirmative defenses with the analysis applicable to determining the sufficiency of Plaintiff's FAC in pleading valid claims for copyright infringement yet, Defendant is not disputing Plaintiff's ownership or Defendant's copying and displays of Plaintiff's works, the sole burdens on a copyright plaintiff in establishing a claim.

## STATEMENT OF FACTS

Plaintiff is the legal and rightful owner of videos which he uses commercially for public display and/or public distribution. [FAC at ¶¶ 11 & 21]. Defendant is a sophisticated news outlet and media company which owns a comprehensive portfolio of digital marketing platforms and traditional broadcasting stations and has advanced operational and strategic expertise in the media industry where copyright is prevalent. [*Id.* at ¶ 27]. Defendant owns and operates a website at

domain www.xxlmag.com (the "*Website*") [*Id.* at ¶ 4], which is a key component of Defendant's popular and lucrative commercial enterprise. [*Id.* at ¶ 24]. The Website is monetized in that it contains paid advertisements. [*Id. at* ¶ 25].

Relevant to this case, Plaintiff created a video of American businessman and former basketball player Michael Jordan stopping a gang member from fighting with his bodyguard ("*Video 1*"). [FAC at ¶ 2, Ex. 1]. Plaintiff, along with the Art of Dialogue LLC ("*AOD*"), created a video of American rapper Melvin Glover, better known as Grandmaster Melle Mel or Melle Mel being interviewed by Plaintiff ("*Video 2*") (Video 1 and Video 2 collectively referred to herein as the "*Videos*"). [FAC at ¶ 3]. Plaintiff acquired the rights to Video 2 by way of written assignment. [*Id.* at ¶ 20]. Plaintiff owns the rights to the Videos and has the exclusive authority to license same for various uses including online and print publications. [*Id.* at ¶¶ 2-3]. Plaintiff created and/or acquired the rights to the Videos with the intention and purpose of the Videos being used commercially and for the purpose of display and/or public distribution. [*Id.* at ¶ 21].

Plaintiff first published Video 1 on May 4, 2015, and it was registered on November 17, 2017, by the United States Copyright Office ("*USCO*") under Registration No. PA 2-063-393. [*Id.* at ¶¶ 15 & 7]. On March 2, 2023, Video 2 was first published, and it was registered on March 6, 2023, by the USCO under Registration No. PA 2-403-848. [*Id.* at ¶¶ 17-18].

On July 24, 2023, in an article titled "Michael Jordan Intervenes in Heated Confrontation Involving Wack 100 in Viral Video from 2015 – Watch" ("*Video 1 Article*"), Defendant displayed a still image from Video 1 ("*Video 1 Image*") on the Website, prominently displayed on the Website as the cover image for the Video 1 Article[1] ("*Infringement 1-1*") as well as displayed as the thumbnail for the Article[2] ("*Infringement 1-3*"). [FAC at ¶ 33, Ex. 2]. Defendant further

---

1 *See* URL: https://www.xxlmag.com/michael-jordan-intervenes-wack-100-confrontation/.
2 *See* URL: https://www.xxlmag.com/search/?s=michael%20jordan%20intervenes

displayed Video 1 in its entirety in the Video 1 Article[3] ("*Infringement 1-2*") (Infringements 1-1, 1-2, and 1-3 collectively referred to as "*Video 1 Infringements*"). [*Id.*].

On March 3, 2023, in an article titled "Melle Mel Thinks Eminem is only Considered a Top Five Rapper because EM's White" ("*Video 2 Article 1*"), Defendant displayed a still image from Video 2 ("*Video 2 Image*")[4] on the Website, prominently displayed as the cover image for the Video 2 Article 1 ("*Infringement 2-1*"). [FAC at ¶ 35, Ex. 2]. Defendant further displayed Video 2 in its entirety in the Video 2 Article 1 ("*Infringement 2-2*"). [*Id.*]. On March 5, 2023, in an article titled "50 Cent Fires Back at Melle Mel for Saying Eminem is a Huge Success because Em's White" ("*Video 2 Article 2*"), Defendant displayed another still image from Video 2 ("*Video 2 Image 2*")[5] on the Website, displayed as the cover image for the Video 2 Article 2 ("*Infringement 2-3*"). [FAC at ¶ 37, Ex. 2]. Defendant further displayed Video 2 in its entirely in the Video 2 Article 2 ("*Infringement 2-4*") (Infringements 2-1, 2-2, 2-3, and 2-4 collectively referred to as "*Video 2 Infringements*"). [*Id.*].

Each of these copies and displays were without permission or authorization from Plaintiff and were willfully and purposefully posted by Defendant to increase the traffic to the Website and, in turn, cause Defendant to realize an increase in the revenues generated via its paid advertisements. [*Id.* at ¶¶ 39 and 53]. Defendant's infringing publications do nothing more than display and describe the subject matters depicted in Plaintiff's Videos, while also containing commercial advertisements directly adjacent to the display of the Videos and Video Images on its Website. [*Id.* at ¶¶ 33-38, Ex. 2].

Defendant's uses of the Videos harms the actual market for the Videos since Defendant, a

---

3 *See* URL: https://www.xxlmag.com/michael-jordan-intervenes-wack-100-confrontation/
4 *See* URL: https://www.xxlmag.com/melle-mell-eminem-not-top-five-rapper/
5 *See* URL: https://www.xxlmag.com/50-cent-melle-mel-eminem-comments-top-five-rapper/

"hip-hop news and entertainment publication" [Memo, Dkt. No. 25, Pg. 2], is the precise market for which the Videos were created for, i.e. commercial display/news reporting, and, if widespread, would eviscerate Plaintiff's potential market for the Videos. [FAC at ¶¶ 21, 56-57].

## SUMMARY OF THE ARGUMENT

Defendant's motion must be denied for a variety of reasons, not the least of which is that the resolution of its affirmative defenses is irrelevant to determining the sufficiency of the FAC (*i.e.* whether Plaintiff stated a valid claim for copyright infringement). Insofar as Defendant has not disputed its copying and display of Plaintiff's works, it is axiomatic that the FAC states *prima facie* copyright infringement claims.

Of equal, if not greater importance, is that Defendant's motion asks the Court to resolve numerous questions of fact, which it cannot do on a Rule 12(c) motion. As will be more fully set forth herein, Defendant asks this Court to take judicial notice of YouTube's Terms of Service ("*TOS*") and find that such TOS authorized its unlawful use of Plaintiff's Videos. This argument is erroneous and must be rejected[6]. In this regard, Plaintiff did not explicitly address YouTube or its TOS in the allegations in the FAC or its exhibits, thereby making this argument one which is outside the scope of the pleading and therefore not ripe for determination. Regardless, even if the FAC somehow made the YouTube TOS a relevant consideration such that it could be deemed to have been included in the FAC, YouTube's various cross-referenced policies and agreements contain conflicting language that render them ambiguous and therefore completely unresolvable

---

[6]    Defendant's request that the Court take judicial notice of YouTube's TOS for the purpose of analyzing its content is erroneous insofar as it is well-settled that, on a motion to dismiss, the Court may only take judicial notice of the *fact* that a document exists, but not for the truth of its contents. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases). The cases relied upon by Defendant do not compel a different result. While Defendant avers that "Courts in this circuit routinely find website terms of service agreements to be valid and enforceable," the cases cited all involved choice of law or forum selection clauses. While these are the types of information that are capable of judicial notice, the same is not true here, where Defendant asks the Court to look to the substance of the TOS and find that same conferred an absolute license to the world to expropriate Plaintiff's content.

on a 12(c) motion. Defendant urges the Court to unilaterally accept that Defendant has complied with the TOS' affirmative obligations without a factual record to support its alleged compliance.

Indeed, Defendant also fails to provide any authority that supports its position that a copyright owner waives or relinquishes its exclusive copyrights simply by posting its copyrighted content to social media. Such a finding, to say the least, would be catastrophic to YouTube's business model since both large and small media and other companies would all flee from a platform that divested them of their intellectual property rights merely through its usage.

Further, Defendant asks this Court to assume Defendant transformed the purpose, to assume, without proof, that Defendant's use did not impact the market, and to assume that no one would plausibly license the Videos and/or Video Images in the manner in which Defendant utilized them. Additionally, Defendant's fair use argument fails under the *Warhol* test, which significantly narrowed the instances in which a fair use affirmative defense may be determined at the motion to dismiss stage.

## STANDARD OF REVIEW

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) citing *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (*internal quotations omitted*). To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id. (citation omitted)*. In reviewing such a motion, courts accept as true all factual statements alleged in the complaint, drawing "all reasonable inferences in [the plaintiff's] favor." *Id.* citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). "[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Id.* citing *Dist. No.*

*1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (internal quotation marks omitted).

Here, it is axiomatic that Plaintiff has stated a claim for copyright infringement, which merely requires Plaintiff to satisfy two simple elements, *to wit*: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The question raised by this motion is therefore not whether the FAC states a claim - it does. Rather, it is whether this Court can and should rule in favor of one of Defendant's affirmative defenses on a Rule 12(c) motion. Plaintiff respectfully submits that the Court should decline to do so, insofar as Defendant bears the burden of establishing its affirmative defenses and cannot do so on the face of the FAC.

## **ARGUMENT**

**I.    YOUTUBE'S TOS DO NOT AUTHORIZE DEFENDANT'S USE OF PLAINTIFF'S VIDEO AND RAISES OBJECTIONS OF FACT NOT RESOLVABLE ON A MOTION TO DISMISS**

For purposes of considering a motion to dismiss, a court generally is confined to the facts alleged in the complaint, however, a court may consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013). Defendant asks this Court to find that YouTube's TOS conferred an absolute and unrestricted sub-license to use Plaintiff's Video 2, outside of the YouTube platform and in anyway Defendant saw fit. The Court should decline Defendant's invitation to dismiss the case on these grounds, as a growing chorus of Courts have similarly decided.

### **A. YouTube's TOS Are Ambiguous and Contain Conflicting Language**

Under Second Circuit law, "the existence of a license is treated as an affirmative defense,

meaning that [defendant] ha[s] the burden to prove its existence." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 42 (2d Cir. 2020). In the context of social media use, attempts in this District to establish a sub-license defense have been consistently rejected. For example, in *Sinclair v. Ziff Davis, LLC*, (No. 18-CV-790 (KMW), 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020)), the Court held that the pleadings contained insufficient evidence to find that Instagram granted the defendant a sublicense to embed plaintiff's photograph on its website. In reaching this holding, the court determined that Instagram's TOS were open to multiple interpretations and that such terms were "insufficiently clear to warrant dismissal of Plaintiff's claims at this stage of litigation."

Similarly, in *McGucken v. Newsweek LLC* (No. 19 CIV. 9617 (KPF), 2022 WL 836786, at *4-5 (S.D.N.Y. Mar. 21, 2022)), the Court determined that it could not rule as a matter of law that defendant had a sub-license to embed content under Instagram's TOS because of the multiple policy terms that would need to deciphered, the limited review permitted on Rule 12(b)(6), and the reasonable inferences to be drawn in plaintiff's favor.

Here, although Defendant sourced Plaintiff's Video 2 from YouTube and not Instagram, Plaintiff respectfully avers that the same result should obtain as in *Sinclair* and *McGucken;* particularly as, even if YouTube's TOS were capable of judicial notice for the purpose Defendant seeks, the TOS are similarly subject to a number of cross-referenced terms and policies which render finding an express sub-license impossible from their face. Defendant urges the Court the accept that it did not violate the very terms it now relies upon to prove valid licensure. For example, YouTube's operable terms of service, in force at the time of the infringing displays, provide a multitude of restrictions on the use of content and explicitly instructs users that they are "not allowed to":

> "1. access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of the Service or any Content except:

(a) as expressly authorized by the Service; or (b) with prior written permission from YouTube and, if applicable, the respective rights holders;"

"9. use the Service to view or listen to Content other than for personal, non-commercial use (for example, you may not publicly screen videos or stream music from the Service);" or

"10. use the Service to (a) sell any advertising, sponsorships, or promotions placed on, around, or within the Service or Content, other than those allowed in the Advertising on YouTube policies (such as compliant product placements); or (b) sell advertising, sponsorships, or promotions on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales (for example, selling ads on a webpage" where YouTube videos are the main draw for users visiting the webpage).

https://www.youtube.com/t/terms?archive=2022010.

Defendant's display of Video 2, accompanied by paid advertisements, is violative of the TOS as it confines such use to "personal, non-commercial use," and does not allow for commercialization of the content on YouTube by "selling ads on a webpage where YouTube videos are the main draw for users visiting the webpage."

Nowhere in YouTube's TOS does YouTube expressly authorize Defendant's use of Plaintiff's Video 2. Even a cursory inspection of the TOS reveals that its terms are subject to more than one reasonable interpretation and are therefore ambiguous. Additionally, there are significant affirmative obligations that a user, such as Defendant, is required to comply with in relation to utilizing content on YouTube, along with explicit restrictions on content usage. Defendant has not demonstrated compliance with any of the affirmative obligations set forth in YouTube's TOS and in fact, Plaintiff has demonstrated that Defendant violated the restricted uses of YouTube content. Notwithstanding the foregoing, as alleged in the FAC, Defendant incorporated Plaintiff's Video 2 on its Website without permission from the original content creator and in violation of the restrictions for content usage contained within YouTube's TOS.

Assuming that the Court undertook to decipher how the various provisions interact, and accept without evidence that Defendant complied with all of the TOS's affirmative obligations, the YouTube's TOS is a convoluted tapestry of overlapping polices, sub-polices, guidelines, and restrictions which are far too ambiguous, especially with the presumptions associated with a 12(c) motion, to dispositively find Defendant's commercial use of the Video 2 was authorized. Moreover, the determination as to whether Defendant complied with YouTube's TOS raises numerous questions of fact that are unresolvable without further factual development and not ripe for resolution on a Rule 12(c) motion.

### B. DEFENDANT CANNOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT ITS USAGE WAS LICENSED

This is a complex issue involving numerous determinations of fact and law inappropriate in the context of a 12(c) motion. Accepting Defendant's argument as proffered, its sub-license argument would be akin to a finding that "any copyright holder who posts his copyrighted material onto a social media platform has waived his copyright to the material." *Graham v. Prince*, No. 15-CV-10160 (SHS), 2023 WL 3383029, at *23 (S.D.N.Y. May 11, 2023) (rejecting assertion that posting to social media platform constitutes a waiver of one's copyrights to the underlying work). The YouTube TOS provisions are ambiguous and "[a]lthough courts may find a license on a motion to dismiss where the terms of the governing contracts are clear," the operative TOS for YouTube is "insufficiently clear to warrant dismissal of Plaintiff's claims at this stage of litigation" *Sinclair*, 2020 WL 3450136, at *1 (determination on motion to dismiss reversed as to sublicense defense on motion for reconsideration). Accordingly, Defendant has failed to establish its affirmative defense of sub-license as a matter of law.

### II.     DEFENDANT HAS FAILED TO ESTABLISH FAIR USE

Defendant erroneously asserts that the use of Video 1 was fair use as a matter of law. As an initial matter, Defendant cites to the Supreme Court's decision in *Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith,* 598 U.S. 508, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023) ("*Warhol IV*"), only in passing, and for the premise that "the first fair use factor "considers the reasons for, and nature of, the copier's use of an original work."[7]. As will be set forth *infra,* Defendant's brief reference to *Warhol IV* wholly ignores the Supreme Court's analysis, which significantly narrowed the applicability of the fair use defense and the ability to resolve same at the motion to dismiss stage. See *Hayden,* 2022 WL 2819364 at *4; *Shihab v. Source Digital, Inc.,* 2024 WL 3461351 (S.D.N.Y. July 18, 2024) (rejecting fair use defense post-*Warhol*).[8]

## A. DEFENDANT'S FAIR USE ARGUMENT IS PREMATURE

Defendant's conclusion that courts within the Second Circuit regularly dismiss copyright claims at the pleading stage on fair use grounds relies entirely on pre-*Warhol* cases and, as such, is wholly without merit. As Judge Koeltl of this Court observed, even before *Warhol IV,* "[f]air use presents a mixed question of law and fact, and because fair use is an affirmative defense, the defendants bear the ultimate burden of proving that the fair use factors balance in their favor." *Grant v. Trump,* 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021). Continuing, Judge Koeltl held that "[b]ecause fair use is a fact-intensive inquiry, it is rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage" and denied the motion to dismiss on those grounds. *Id.* (quoting *Graham,* 265 F. Supp. 3d at 377, 379 ("[I]t is conceivable–albeit highly unlikely–that a fair use affirmative defense can be addressed on a motion to dismiss[.]")).

The decision in *Grant* is consistent with prior Circuit precedent holding that Courts may

---

[7]    Memo, *Dkt. No.* 25, Pgs. 13 and 22

[8]    *Pacheco v. Chickpea at 14th St. Inc.*, No. 18CV251JMFGWG, 2019 WL 6683826, at *2 (S.D.N.Y. Dec. 6, 2019) ("The failure to cite or discuss . . . controlling authority in Defendants' initial motion papers . . . might well have warranted sanctions in its own right.").

err by deciding a fair use defense even on a motion for summary judgment. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) (collecting cases). Such a conclusion was further bolstered by the Supreme Court's decision in *Warhol IV,* wherein the Court held that where the question of fair use is being asserted to support a dismissal pursuant to Rule 12(b)(6), "[r]eviewing courts should appropriately defer to the jury's findings of underlying complaints…". *Id.; s*ee also *Google LLC v. Oracle Am., Inc*., 141 S. Ct. 1183, 1186 (2021) (recognizing that the application of "fair use" might "involve determination of subsidiary factual questions, such as whether there was harm to the actual or potential markets for the copyrighted work…"); *Hayden v. Koons*, 2022 WL 2819364, *4 (S.D.N.Y. July 18, 2022) (citing *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021)) ("Defendant's fair use defense cannot be resolved at the motion to dismiss stage. Because fair use is an affirmative defense, the defendant bears the ultimate burden of proving that the factors balance in its favor.").

As will be more fully set forth herein, the *Warhol IV* decision calls into question whether there are any instances in which a District Court could properly consider a fair use defense at the motion to dismiss stage. That is because, in the context of a Rule 12(c) motion, the Court may only consider the allegations that are set forth in the complaint itself; and defendants are precluded from introducing any evidence beyond the four corners of the pleadings. As such, an accused infringer does not (and cannot) provide the Court with any evidence necessary to evaluate the nuanced analysis required under *Warhol IV* for determining whether an otherwise admittedly unlawful use would qualify as "fair." Under such circumstances, the Court must find Defendant's for-profit and unlicensed use of Plaintiff's work—for the exact purpose for which it was created—is non-transformative as a matter of law and therefore, not fair use.

### B. THE APPLICABLE FACTORS DO NOT FAVOR A FINDING THAT DEFENDANT'S SECONDARY USE WAS FAIR

In determining whether a particular use is fair, the factors to be considered shall include: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

As an initial matter, Defendant utilized the term "viral" in its categorization of Video 1 in an attempt to support its defense of fair use. [*see* Memo, Dkt. No. 25, Pgs. 14, 15, and 17 – "...the Video's sudden virality"; "The Jordan Video went viral after being shared by the DailyLoud on X.com"; "...Townsquare's use of the entire Jordan Video was qualitatively important to its reporting on the viral DailyLoud post."]. However, there is nothing in the record to support that Video 1 went "viral" eight years after its original publication in 2015. In fact, Defendant's own title to the Video 1 Article - "...Viral Video from 2015" - indicates that the video went viral back in 2015, when it was originally published, not upon the DailyLoud publication in 2023. As such, the Defendant's self-serving, unsupported categorization on the virality of Video 1 should be disregarded when evaluating a fair use defense on a Rule 12(c) motion.

### a. THE FIRST FAIR USE FACTOR WEIGHS HEAVILY AGAINST DEFENDANT

The first fair use factor requires the court to "consider the extent to which the secondary work is 'transformative,' as well as whether it is commercial." *Hachette Book Grp., Inc. v. Internet Archive*, No. 20-CV-4160 (JGK), 2023 WL 2623787, at *6 (S.D.N.Y. Mar. 24, 2023) (citing *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d Cir. 2021) (*Warhol III*) and *Warhol IV*). Because the question of transformation lies at the heart of the fair use doctrine, the use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use. *Id*.

### i. **DEFENDANT FAILED TO TRANSFORM THE ORIGINAL PURPOSE OF THE VIDEO**

A secondary use has "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media, Ltd. v. Coed Media Grp., LLC,* 297 F. Supp. 3d 339, 351 (S.D.N.Y. 2017); see also *Psihoyos v. Nat'l Exam'r,* No. 97 CIV. 7624 (JSM), 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998) (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created"). "Even an infringer's separate purpose, by itself, does not necessarily create new aesthetics or a new work that alter[s] the first [work] with new expression, meaning or message." *Monge v. Maya Mags., Inc.,* 688 F.3d 1164, 1175 (9th Cir. 2012); *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)) ("[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative.").

Defendant argues that its secondary use of Video 1 was transformative because it "reported directly upon the contents of the Video, and provided additional context on the reason of someone allegedly involved in the altercation to the Video's sudden virality." [Memo, Dkt. No. 25, Pg. 14]. Defendant further purports that it "featured the Video specifically 'to illustrate what all the fuss is about.'" [*Id.*]. However, this is not an accurate description of the content of the Defendant's Video 1 Article. First, it is axiomatic that the display of Video 1 is clearly a derivative owned by the rightsholder as part of the rights to the Video and therefore it is non-transformative. Second, the proposed "additional context" is a gross exaggeration. Video 1, originally published in 2015, featured Michael Jordan stopping a gang member from fighting with his bodyguard. Defendant's article includes a transcription of the audio in Video 1 and description of the event that took place.

Defendant adds nothing to Video 1. Following the transcription and summary of Video 1, Defendant includes 3 sentences at the end of the article, including the response of a person who had been rumored to have been involved in the event captured in Video 1, along with a transcription of said person's denial of involvement. Defendant now claims that the simple 3 sentences summarizing the response of the allegedly involved person, whose involvement was merely an unverified rumor at best, somehow transformed Video 1. However, Defendant does not explain nor justify why the entirety of Video 1 was included in the Video 1 Article nor why a reader would need the Video Image as the cover image for said article. If the purpose of the defendant's article was merely to cover the response of a person allegedly involved in the video, then said person's response is all that would be needed. Defendant cannot provide any such explanation or justification merely through attorney argument in the context of a Rule 12(c) motion.

Although the preamble to section 107 of the Copyright Act cites news reporting as a preferential use, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 557 (1985). As such, under Second Circuit law, "a news organization… may not freely copy creative expression solely because the expression itself is newsworthy." *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir, 2014); see also *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 406 n.6 (S.D.N.Y. 2016) ("Newsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job.").

Based upon the unassailable facts alleged in the FAC, Defendant's use did not transform the original purpose of Video 1, which was created for the purpose of commercial and public

display. [FAC ¶ 21]. Indeed, Defendant used Video 1 and the Video 1 Image for the exact same purpose for which it was created: commercial and public display and entertainment. There can be no dispute that Defendant's publication of Video 1 and the Video 1 Image was identical to Plaintiff's originally intended purpose for Video 1. Under such circumstances, Defendant failed to transform the purpose of Video 1.

      ii.  **DEFENDANT USED VIDEO 1 AS AN "ILLUSTRATIVE AID" TO REPORT ON THE CONTENT DEPICTED IN THE VIDEO**

In cases where media organizations use copyrighted works as illustrative devices to comment on the content depicted in the work, courts in this Circuit have consistently determined that such use is <u>not</u> transformative. See, e.g., *Lynk Media, LLC v. Peacock TV LLC,* No. 23-CV-5845 (JGK), 2024 WL 2057235, at *3 (S.D.N.Y. May 8, 2024)(J. Koeltl) (denying Rule 12(b)(6) motion on fair use where court found that news organization used videos as illustrative aids to describe the events depicted in the videos, notwithstanding defendant's inclusion of commentary surrounding such events); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) (denying Rule 12 motion on fair use where court found that news organization used a New York Post photograph of a convicted criminal primarily to describe the events surrounding his sentencing); *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457 (E.D.N.Y. 2020) (secondary use of a photograph of the Battery Park terrorist suspect held not transformative where news organization published a descriptive report of the arrest); *Sands v. What's Trending, Inc.,* No. 20-CV-2735 (GBD) (KHP), 2021 WL 694382, at *3 (S.D.N.Y. Feb. 23, 2021) (finding that news organization's re-publication of a photograph was not transformative because it "did not offer a critique of the Photograph" nor portray "the film in a different light than Plaintiff's original purpose."); *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 606 (S.D.N.Y. 2020); *reconsideration denied*, No. 19 CIV. 9617 (KPF), 2020 WL 6135733 (S.D.N.Y. Oct. 19,

2020) (finding that transformative effect could not be determined as a matter of law on a Rule 12 motion where the photograph "was incorporated into the Article merely as an illustrative aid."); *Psihoyos v. Nat'l Exam'r*, No. 97 CIV. 7624 (JSM), 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998) (where photograph of a customized car was republished in a news article, publisher's "use is not transformative, because its piece uses the photo to show what it depicts.").

Here, according to Defendant, Defendant's secondary use of Video 1 and the Video 1 Image were undertaken as a result of Defendant's determination that Video 1 was "went viral after being shared by the DailyLoud on X.com." [Memo, Dkt. No. 25, Pg. 15]. Thus, according to Defendant's argument, it used Video 1 and the Video 1 Image in its article as illustrative aids wherein Defendant transcribed and summarized the event depicted in Video 1. Such descriptive news reporting, even if sprinkled with written commentary, is not transformative or, at best, is only minimally transformative. As the Supreme Court held in *Warhol IV*:

> "Whether a use shares the purpose or character of an original work, or instead has a further purpose or different character, **is a matter of degree**. Most copying has some further purpose, in the sense that copying is socially useful *ex post*. **Many secondary works add something new. That alone does not render such uses fair**. Rather, the first factor (which is just one factor in a larger analysis) asks "whether and to what extent" the use at issue has a purpose or character different from the original. *Campbell [v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579, 114 S. Ct. 1164, 1171, 127 L. Ed. 2d 500 (1994)] (emphasis added). The larger the difference, the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely.

*Warhol IV*, 143 S. Ct. at 1274–75.

In a highly relevant post-*Warhol IV* decision, the Honorable John G. Koeltl recently denied a Rule 12(b)(6) motion on grounds that "Defendants lose the presumption of transformative use usually afforded to commentary or news stories where, as here, the use is merely to provide an illustrative aid depicting a person or event described in the [work]." *Lynk Media, LLC,* 2024 WL

2057235, at *3. Moreover, the court determined that use of the videos was not "reasonably necessary to achieve [the defendants'] new purpose." *Id.* ("[Defendants] simply used the plaintiff's videos without paying for their use to illustrate the subject matter of the documentaries. If this were permitted, it would undercut the market for news photographers and videographers."); see also *Barcroft,* 297 F. Supp. 3d at 352 ("[The defendant's] argument, if accepted, would eliminate copyright protection any time a copyrighted [work] was used in conjunction with a news story about the subject of that [work]. That is plainly not the law.").[9]

The case at bar is also analogous to *McGucken v. Newsweek,* wherein the court denied a Rule 12(b)(6) motion on fair use after determining that it could not be found "as a matter of law that Defendant's use of the photograph was transformative." *McGucken,* 464 F. Supp. 3d at 606. Specifically, the court found Newsweek had used a photograph of a lake in Death Valley National Park "<u>primarily</u> as an illustrative aid depicting the subject of the Article." *Id.* (underlined added). Although Newsweek's article incorporated quotes from McGucken about the taking of his photograph, the court emphasized that "the mere addition of some token commentary is not enough to transform the use of a photograph when that photograph is not itself the focus of the article." *Id.*

Here, like the Newsweek article in *McGucken,* Defendant used Video 1 and the Video 1 Image as illustrative aids to describe events depicted in the video. Defendant's infringing article

---

[9]    Indeed, even before *Warhol IV* determined that the commercial usage of content for the same purpose as the original is non-transformative, courts routinely rejected fair use arguments where "wholesale copying sprinkled with written commentary . . . was at best minimally transformative." *Monge,* 688 F.3d at 1176; *see also Ferdman v. CBS Interactive Inc.,* 342 F.Supp.3d 515, 535 (S.D.N.Y. September 24, 2018) ("While the Court concludes that Defendant's use of the Holland Photograph is somewhat transformative, it is not so transformative as to entitle Defendant to a fair use defense as a matter of law."); *Warhol* IV, 598 US at 547 (citing *Authors Guild v. Google, Inc.,* 804 F.3d 202, 215 (2d Cir. 2015)) ("Copying might have been helpful to convey a new meaning or message. It often is. But that does not suffice under the first factor…As Judge Leval has explained, '[a] secondary author is not necessarily at liberty to make wholesale takings of the original author's expression merely because of how well the original author's expression would convey the secondary author's different message.'" Thus, Defendant's descriptive news reporting, even if sprinkled with some written commentary, is of a very low degree of transformation, if at all.

did not contain any commentary or criticism directed at Video 1 itself. To the extent Defendant's article contained some limited commentary about the subject matter depicted in Video 1, the issue of whether the accompanying text sufficiently added "new information, new aesthetics, new insights and understandings," (*Castle Rock Ent., Inc. v. Carol Pub. Group, Inc*., 150 F.3d 132, 141 (2d Cir. 1998)) to Video 1 in furtherance of "the Progress of Science and useful Arts" (U.S. Const., Art. I, § 8, cl. 8) is disputed fact and, therefore, should not be decided as a matter of law on the face of the pleadings.[10]

### iii.  DEFENDANT'S SECONDARY USE WAS COMMERCIAL

"The first statutory factor specifically instructs courts to consider whether copyrighted materials are used for a commercial purpose or for a nonprofit educational purpose, the former tending to weigh against a finding of fair use." *TCA Television Corp.,* 839 F.3d at 183 (*citing Campbell,* 510 U.S. at 585 (internal quotation marks omitted). The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562. Thus, "when the copier directly and exclusively acquires conspicuous financial rewards from its use of the copyrighted material" a finding of fair use is less likely. *Associated Press,* 931 F.Supp.2d at 551 (quoting *Blanch v. Koons*, 467 F.3d 244, 253 (2d Cir. 2006)). Here, commercial advertisements appear adjacent to or below Video 1 and the Video 1 Image on the Website [FAC, Ex. 2], thereby showing

---

[10]      Defendant's reliance on *Walsh v. Townsquare,* 464 F. Supp.3d 570 (S.D.N.Y., June 1, 2020) is misplaced. In that case, the court found defendant's use of a photo of musical performer Cardi B was of a different purpose than the original. However, in that case, the original purpose of the Cardi B photo was not for purposes of news reporting. Instead, Plaintiff was just an amateur photographer who captured a photo of Cardi B at a Tom Ford fashion event. A commercial news organization then republished the photograph for a different purpose, which was part of a news article about Cardi's B's fashion line. The Court determined that use of the photograph could not have had any impact on the actual or potential market for the original work because plaintiff was not in the news reporting industry. Here, in contrast, Plaintiff has alleged commercial harm and market impact because it occupies the same market as defendant: commercial reporting and public display.

Defendant's commercial use. See *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing alongside the unauthorized use of photographs demonstrated a defendant's commercial purpose). Because Defendant's use is non-transformative, the commercial use takes on greater weight. *United States v. Am. Soc. of Composers Authors & Publishers*, 599 F.Supp.2d 415, 429 (S.D.N.Y. 2009) ("[A]pplicant's use of previews is not transformative, and, thus, the significance of its commercial use is not reduced, but instead takes on greater importance.").

### b.  THE SECOND FAIR USE FACTOR DOES NOT FAVOR DEFENDANT

The second fair use factor asks the Court to consider the "nature of the copyrighted work." 17 U.S.C. § 107(2). Although the Second Circuit has held that the second factor "has rarely played a significant role in the determination of a fair use dispute" (*Authors Guild v. Google, Inc*., 804 F.3d 202, 220 (2d Cir. 2015)), that observation is itself less significant in light of the decision in *Warhol IV,* to the extent that *Warhol IV* holds that a determination of the first fair use factor will necessarily affect the resolution of the remaining fair use factors. In analyzing the second factor, the Court considers "(1) whether the work is expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work is published or unpublished." *Blanch*, 467 F.3d at 256. "The mere fact that the original is a factual work . . . should not imply that others may freely copy it," as "authors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression." *Authors Guild v. Google, Inc*., 804 F.3d 202, 220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016).

Here, to the extent it remains a relevant post-*Warhol* consideration, while generally factual in nature and published, the innumerable artistic decisions made in the creation of the video, along with fact that the Video 1 and the Video 1 Image were utilized by Defendant as illustrative aids

for the article in which they appeared within, renders this factor neutral.

### c.  THE THIRD FAIR USE FACTOR DOES NOT FAVOR DEFENDANT

Under the third factor, "[t]he question is whether 'the quantity and value of the materials used, are reasonable in relation to the purpose of the copying." *McGucken*, 464 F. Supp. 3d 594 at 608. As described above, the secondary use shows the entirety of Video 1, along with featuring the Video 1 Image as the cover image for the article on the Website. The third factor bearing on fair use asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell,* 510 U.S. at 586 (quoting 17 U.S.C. § 107(3)). In assessing this factor, the Court considers not only "the quantity of the materials used" but also "their quality and importance." *Id.* at 587. The Court should also consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480 (2d Cir. 2004) (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110. "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Video 1 was reproduced by Defendant at its full length without any visible modification. In taking the entirety of Video 1, Defendant used more of the copyrighted works than was necessary to accomplish its purpose. *See Rogers v. Koons*, 960 F.2d 301, 311 (2d Cir. 1992). Further, as a qualitative matter, since Defendant re-published Video 1 in its entirety, Defendant has taken the heart of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted); *Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's

copyrighted expression."). Moreover, Defendant's copying of Video 1 and use of the Video 1 Image was unnecessary to achieve Defendant's media reporting purpose. As noted by Judge Easterbrook in *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014), "[t]he fair-use privilege under § 107 is not designed to protect lazy appropriators." In this case, there were several legal alternatives available, including that Defendant could have published its news story *without* any use of Video 1 whatsoever; or Defendant could have obtained a license directly from Plaintiff, or from a licensing agency for a different image of the famous athlete, or perhaps even an image of the alleged participant in the video.

Defendant cannot provide any compelling justification for why its use of Video 1 and the Video 1 Image was necessary or how it served Defendant's purpose better than the alternative means that did not rely on exploiting Plaintiff's copyrighted work without authorization. By opting to expropriate Plaintiff's expression, Defendant has taken more than what was "necessary" to effectuate its news reporting purpose. As such, the third factor weighs heavily in Plaintiff's favor. *See Psihoyos*, 1998 WL 336655, at *4 (defendant "was simply using the [plaintiff's] photo to save itself the expense of obtaining its own photo").

### d. WITH RESPECT TO THE FOURTH FACTOR, DEFENDANT'S SECONDARY USES NEGATIVELY IMPACT THE MARKET FOR PLAINTIFF'S VIDEO

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor requires the court to investigate whether infringement will affect "traditional, reasonable, or likely to be developed market." *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457. 470 (E.D.N.Y. 2020). This factor is therefore "concerned with secondary uses that, by offering a substitute for the original, usurp a market that properly belongs to the copyright-holder. [T]here is a presumption of market harm when a commercial use amounts to mere duplication of the entirety of an original." *Hudson Furniture,*

*Inc. v. Mizrahi*, No. 120CIV04891PAC, 2023 WL 6214908, at *14 (S.D.N.Y. Sept. 25, 2023) (internal citation and quotations omitted). Defendant's unlawful appropriation of Video 1 usurps Plaintiff's ability to control the display of his copyrighted material.

Analysis of this factor requires the court to "balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *Warhol III* (citing *Bill Graham Archives v. Dorling Kindersley Ltd.,* 448 F.3d 605, 613 (2d Cir. 2006)); see also *Wright v. Warner Books, Inc.*, 953 F.2d 731, 739 (2d Cir. 1991) (this factor requires the court to "balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied"). As such, this Court is required to consider whether "unrestricted and widespread conduct of the sort engaged in by [Defendants] would result in a substantially adverse impact on the potential market" for Plaintiff's Video. *Warhol III,* 11 F.4th at 49 (quoting *Campbell*, 510 U.S. at 590, 114 S.Ct. 1164; *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 179 (2d Cir. 2018)).

Defendant's contention that the fourth fair use factor favors it is further erroneous to the extent it seeks to impermissibly shift the burden to Plaintiff to disprove effect on the marketplace, rather than on Defendant to prove same. Indeed, the Second Circuit held that:

> "[W]e have never held that the rightsholder bears the burden of showing actual market harm. Nor would we so hold. Fair use is an affirmative defense; as such, the ultimate burden of proving that the secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary user. See *Campbell*, 510 U.S. at 590, 114 S.Ct. 1164 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."); *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998) ("As always, [the secondary user] bears the burden of showing that his use does not" usurp the market for the primary work); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) ("Not much about the fair use doctrine lends itself to absolute statements, but the Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use.").

*Warhol III,* 11 F.4th at 49.

In light of the foregoing, this Court should find that Defendant has failed to show the fourth fair use factor favors it, insofar as Defendant has provided no market evidence to support its contention that allowing entities such as itself, i.e. media publications, or reporting agencies and/or paid streaming subscription platforms to take any portion of Plaintiff's rights-protected work under the guise of creating a "news report" would not adversely affect the market for Plaintiff to license his content. That is particularly so where, as here, the Court must accept the well-pleaded allegations of the FAC which allege that permitting the widespread use of Plaintiff's Video(s) in a manner similar to those uses made by Defendant here would destroy the market for Plaintiff's original works. [FAC at ¶ 57]. See *Hayden*, 2022 WL 2819364 at *4 ("The Complaint sufficiently alleges a market for Plaintiff's work and is not required to plead more with the aim of negating the fair use defense."). Contrary to Defendant's assertion, Defendant's secondary use does not fall within a transformative market nor is the FAC devoid of allegations as to market harm (*see* FAC, ¶¶ 56-57). That a third-party's secondary use may have also inhibited the potential market for Plaintiff's copyrighted work should not be viewed as controlling as Defendant utilized same for news/media reporting, the very market that Video 1 was intended to occupy.

## III.  DEFENDANT'S USE OF THE VIDEO IMAGES ARE ACTIONABLE

### A.  DEFENDANT'S USE OF THE VIDEO IMAGES WAS NOT *DE MINIMIS*

Defendant argues that its use of the Video 1 Image and Video 2 Images were *de minimis* and trivial and therefore non-actionable. [Memo, Dkt. No. 25, Pg. 28][11]. The *de minimis* use analysis asks whether the defendant's copying is both quantitatively and qualitatively sufficient to

---

11 As an initial matter, 17 U.S.C. § 106(5) grants a copyright owner the exclusive right to display the copyrighted work publicly, and explicitly includes the exclusive right to display "individual images of a motion picture or other audiovisual work." Since Plaintiff has the exclusive right to display the individual images from his Videos, Defendant's use of the Video Images are a violation of this exclusive right and cannot be found to be *de minimis*.

support the legal conclusion that infringement (i.e., actionable copying) has occurred. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74–75 (2d Cir. 1997). The qualitative component concerns the degree of similarity between the two works, focusing on "whether an average lay observe would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks, citation, and alterations omitted). "The quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying." *Ringgold*, 126 F.3d at 75 (internal citation omitted).  Stated otherwise, the question may also be framed as to whether or not it is obvious that copying has occurred or whether the usage is so trivial as to make that determination impossible.

Here, an average lay observer would recognize the infringing images as having been appropriated from Plaintiff's Videos and that Defendant has engaged in actional copying. See, e.g., *Dyer v. V.P. Records Retail Outlet, Inc.,* 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008) (denying summary judgment on grounds of *de minimis* copying for shots in which offending images "take up most of the screen" for "almost three seconds").

In a qualitative sense, Defendant's use of the Video 1 Image and Video 2 Images cannot possibly be "trivial" as they were material to the subject matter of the Defendant's articles. In other words, Defendant consciously chose to embed the Videos within the articles, and to publish said articles utilizing the Video 1 Image and Video 2 Images as the cover images for the articles, using them to illustrate a media story about the subject matter depicted in the images and Videos. Given the material nature of Defendant's qualitative copying, the *de minimis* defense fails as a matter of law. See, e.g, *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 71–72 (2d Cir. 1999) ("the quantitative analysis of two works must always occur in the shadow of their qualitative

nature."); see also *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) ("[a] de minimis defense does not apply where the *qualitative* value of the copying is material.").

**B.    THE APPLICABLE FACTORS DO NOT FAVOR A FINDING THAT DEFENDANT'S SECONDARY USE OF THE VIDEO IMAGES WAS FAIR**

Defendant again erroneously seeks to invoke the defense of fair use while ignoring the Supreme Court's analysis in *Warhol IV*, which significantly narrowed the applicability of the fair use defense and the ability to resolve same at the motion to dismiss stage. For the reasons set forth below, Defendant's fair use defense fails.

**a.    THE FIRST FAIR USE FACTOR WEIGHS HEAVILY AGAINST DEFENDANT**

As per the Supreme Court, the analysis of the first factor is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use. *Warhol IV*, 598 U.S. at 525. To this end, "[i]f an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying. *Id.* In this case, Defendant's commercial use of the Video Images are for the exact - if not highly similar - purpose as the underlying Videos from which they were taken and as such, based upon *Warhol's* significant clarification as to the transformative inquiry, Defendant's use would not be considered transformative.

**b.    THE SECOND FAIR USE FACTOR DOES NOT FAVOR DEFENDANT**

"The mere fact that the original is a factual work . . . should not imply that others may freely copy it," as "authors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression." *Authors Guild*, 804 F.3d at 220. With respect to the second factor, the Second Circuit has held that this factor "has rarely played a significant role in the determination of a fair use dispute" (*Id.* 804 F.3d at 220), an observation that was enhanced by

*Warhol IV* holding that a determination of the first fair use factor will necessarily affect the resolution of the remaining fair use factors.

Curiously, while Defendant asserts the fair use defense specifically for the use of the Video Images in Section III.B of its memorandum, it only addresses the use of the Videos themselves in Section III.B.2, which touches on the second fair use factor and which was addressed in the above-sections. Regardless, while generally factual in nature and published, the innumerable artistic decisions made in the creation of the Videos, along with the Video Images being utilized by Defendant as illustrative aids for the articles in which they were utilized, this factor is rendered neutral at worst, and disfavors Defendant at best.

### c.  THE THIRD FAIR USE FACTOR DOES NOT FAVOR DEFENDANT

Under the third factor, as discussed in detail above, "[t]he question is whether 'the quantity and value of the materials used, are reasonable in relation to the purpose of the copying." *McGucken*, 464 F. Supp. 3d 594 at 608. The use of the Video 1 Image and the Video 2 Images cannot possibly be "trivial" as they were specifically hand picked by Defendant and utilized as cover images for their respective articles published on Defendant's Website. Were they to have been so meaningless and "trivial," why would Defendant bother extracting those specific frames from their respective videos and publishing said frames on its commercial Website, making said frames the first image that the viewers see when viewing the articles? Given the material nature of Defendant's qualitative copying, the *de minimis* defense fails as a matter of law. See, e.g, *Nihon Keizai Shimbun, Inc.,*166 F.3d at 71–72 ("the quantitative analysis of two works must always occur in the shadow of their qualitative nature."); see also *Dun & Bradstreet Software Servs., Inc.*, 307 F.3d at 208 ("[a] de minimis defense does not apply where the *qualitative* value of the copying is material.").

Defendant cannot provide any compelling justification for why its uses of the Video 1 Image and the Video 2 Images was necessary or how it served Defendant's purpose better than the alternative means that did not rely on exploiting Plaintiff's copyrighted works without authorization. By opting to expropriate Plaintiff's expression, Defendant has taken more than what was "necessary" to effectuate its news reporting purpose. As such, the third factor weighs heavily in Plaintiff's favor. *See Psihoyos*, 1998 WL 336655, at *4 (defendant "was simply using the [plaintiff's] photo to save itself the expense of obtaining its own photo").

### d.  THE FOURTH FAIR USE FACTOR FAVORS PLAINTIFF

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Analysis of this factor requires the Court to consider whether "unrestricted and widespread conduct of the sort engaged in by [Defendant] would result in a substantially adverse impact on the potential market" for Plaintiff's Videos and Video Images. *Warhol III,* 11 F.4th at 49. At a minimum, Defendant's secondary use "impair[s] the value" of Plaintiff's copyrights and allowing unrestricted use of a similar manner would have an adverse impact on the potential market for the Videos. *Mattel, Inc.*, 2021 WL 2292918, at *6.

Contrary to Defendant's assertion, Defendant's secondary uses do not fall within a transformative market nor should the Court assume, as Defendant asks it to, that it is "laughable" that the still images that Defendant unilaterally stole from the Videos and utilized as cover images for its articles "could serve as market substitutes for the Videos..." Defendant clearly found value in utilizing these images, so it would make inherent sense that others in the same/similar industry would as well.

In light of the foregoing, this Court should find that Defendant has failed to show the fourth fair use factor favors it, insofar as Defendant has provided no market evidence to support its

contention that allowing music, entertainment, media or news reporting agencies to take any portion of Plaintiff's rights-protected Videos under the guise of creating a "news report", or embedding it without license from another unlicensed user, would not adversely affect the market for Plaintiff to license and/or otherwise utilize and benefit from his content. That is particularly so where, as here, the Court must accept the well-pled allegations of the FAC which allege that permitting the widespread use of Plaintiff's Videos and Video Images in a manner similar to the use made by Defendant here would destroy the market for Plaintiff's original works. [FAC at ¶¶ 56-57]. See *Hayden*, 2022 WL 2819364 at *4 ("The Complaint sufficiently alleges a market for Plaintiff's work and is not required to plead more with the aim of negating the fair use defense."). Accordingly, factor four does not favor a finding of fair use.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully submits that Defendant's Rule 12(c) Motion for Judgment on the Pleadings should be DENIED in its entirety. In the event the Motion is granted, Plaintiff respectfully requests leave of Court to file a Second Amended Complaint.

Dated: November 15, 2024

Respectfully submitted,

                                   **SANDERS LAW GROUP**

                                   By: *<u>/s/ Jaymie Sabilia-Heffert</u>*
                                   Jaymie Sabilia-Heffert, Esq.
                                   Craig B. Sanders, Esq.
                                   333 Earle Ovington Blvd, Suite 402
                                   Uniondale, NY
                                   Tel: (516) 203-7600
                                   Email: jheffert@sanderslaw.group
                                   Email: csanders@sanderslaw.group
                                   *Attorneys for Plaintiff*