UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
DELRAY RICHARDSON,  :
                    Plaintiff,  :  1:24-cv-04217- RA
:
       - against -  :  **ORAL ARGUMENT REQUESTED**
:
TOWNSQUARE MEDIA, INC.,  :
:
                   Defendant.  :
------------------------------------------------------------------------ x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**DAVIS WRIGHT TREMAINE LLP**
Rachel F. Strom
Abigail B. Everdell
Celyra I. Myers
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax

*Attorneys for Defendant Townsquare Media, Inc.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. TOWNSQUARE HAS A VALID LICENSE TO EMBED THE MELLE MEL VIDEO ............................................................................................................................... 2

II. DEFENDANT'S EMBED OF THE JORDAN VIDEO WAS FAIR USE ......................... 7

    A. The First Factor Weighs in Favor of Fair Use of the Jordan Video ....................... 8

    B. The Second Fair Use Factor Weighs in Favor of Fair Use .................................... 9

    C. The Third Factor Weighs in Favor of Fair Use..................................................... 10

    D. The Fourth Factor—the Effect on the Market—Also Supports a Finding of Fair Use ................................................................................................................. 11

III. TOWNSQUARE'S USE OF THE SCREENSHOTS IS NOT ACTIONABLE AS THE USES WERE *DE MINIMIS* AND FAIR ................................................................ 12

    A. Townsquare's Use of the Screenshots Was *De Minimis* ..................................... 12

    B. Townsquare's Use of The Screenshots Was Fair Use .......................................... 13

        1. The First Fair Use Factor Favors Townsquare ........................................ 13

        2. The Second Fair Use Factor Weighs in Favor of Fair Use ...................... 14

        3. The Third Fair Use Factor Favors Defendant ......................................... 14

        4. The Fourth Factor—the Effect on the Market—Supports Fair Use ......... 14

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*,
    685 F.3d 174 (2d Cir. 2012)..................................................................................................2

*Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023)............................................................................................................7, 8

*Aug. Image, LLC v. Girard Ent. & Media LLC*,
    2024 WL 1375480 (S.D.N.Y. Apr. 1, 2024)...........................................................................8

*Authors Guild v. Google, LLC*,
    804 F.3d 202 (2d Cir. 2015).............................................................................................10, 11

*Barcroft Media, Ltd. v. Coed Media Grp.*,
    LLC, 297 F. Supp. 3d 339 (S.D.N.Y. 2017) ......................................................................8, 13

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994).............................................................................................................14

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013).................................................................................................14

*Clark v. Transp. Alts., Inc.*,
    2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019) ................................................................11, 12

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,
    307 F.3d 197 (3d Cir. 2002).................................................................................................13

*Dyer v. V.P. Records Retail Outlet, Inc.*,
    2008 WL 2876494 (S.D.N.Y. July 24, 2008) ......................................................................12

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)....................................................................................................2

*Graham v. Prince*,
    2023 WL 3383029 (S.D.N.Y. May 11, 2023) .......................................................................4

*Grant v. Trump*,
    563 F. Supp. 3d 278 (S.D.N.Y. 2021)................................................................................7, 8

*Hirsch v. Complex Media, Inc.*,
    2018 U.S. Dist. LEXIS 209701 (S.D.N.Y. Dec. 10, 2018) ...................................................9

*Kelley v. Morning Bee, Inc.*,
    2023 WL 6276690 (S.D.N.Y. Sep. 26, 2023)...............................................................................7

*Lynk Media, LLC v. Peacock TV LLC*,
    2024 WL 2057235 (S.D.N.Y. May 8, 2024) ...............................................................................8

*McGucken v. Newsweek LLC*,
    2022 WL 836786 (S.D.N.Y. Mar. 21, 2020) ..........................................................................3, 4

*McGucken v. Newsweek LLC*,
    464 F. Supp. 3d 594 (S.D.N.Y. 2020)....................................................................................2, 4

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
    166 F.3d 65 (2d Cir. 1999).......................................................................................................12

*Rudkowski v. MIC Network, Inc.*,
    2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018) .........................................................................12

*Sands v. What's Trending*,
    2021 U.S. Dist. LEXIS 33503 (S.D.N.Y. Feb. 23, 2021)..........................................................9

*Santiago v. Townsquare Media, Inc.*,
    2024 U.S. Dist. LEXIS 143298 (S.D.N.Y. Aug. 7, 2024).........................................................2

*Santos v. Kimmel*,
    2024 WL 3862149 (S.D.N.Y. Aug. 19, 2024)...........................................................................7

*Sinclair v. Ziff Davis, LLC*,
    2020 WL 3450136 (S.D.N.Y. June 24, 2020) .......................................................................3, 4

*Sosin v. Richardson*,
    210 Cal. App. 2d 258 (Cal. Ct. App. 1962) ..............................................................................5

*Sullivan v. Finn*,
    2017 WL 1209933 (N.D. Cal. Apr. 3, 2017) ............................................................................5

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    861 F. Supp. 2d 336 (S.D.N.Y. 2012), *aff'd*, 742 F.3d 17 (2d Cir. 2014),
    *and aff'd*, 756 F.3d 73 (2d Cir. 2014) ..........................................................................9, 11, 14

*Walsh v. Townsquare Media*,
    464 F. Supp. 3d 570 (S.D.N.Y. 2020).................................................................................10, 12

*Yang v. Mic Network, Inc.*,
    405 F. Supp. 3d 537 (S.D.N.Y. 2019), *aff'd,* 2022 WL 906513
    (2d Cir. Mar. 29, 2022) ......................................................................................................14, 15

iii

Case 1:24-cv-04217-AKH    Document 30    Filed 11/26/24    Page 5 of 20

**Statutes**

17 U.S.C. § 505 ...............................................................................................................................15

**Other Authorities**

Barton Beebe, An Empirical Study of U.S. Copyright Fair Use Opinions, 1978-2005,
    156 U. Pa. L. Rev. 549 (2008) ................................................................................................10

Fed. R. Evid. 201(b)(2) .....................................................................................................................2

## INTRODUCTION

Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Opposition" or "Opp.") argues the Court should ignore the deficiencies of Plaintiff's claims, and send this case to discovery without examining critical materials uncontroversially subject to judicial notice and/or incorporated into the pleadings. Plaintiff's strategy is clear: If he can prolong this litigation, he can avoid a ruling on the merits that, by posting the Melle Mel Video on YouTube, its prior owner granted a license to third parties to embed the Video. Thus, Townsquare's embed was licensed. Without a ruling on the merits here, Plaintiff and similar plaintiffs can continue to bring strike suits against media companies who rely on the YouTube Terms of Service to report the news, and leverage the prospect of prolonged litigation to extract settlement of these claims. It is time to put this matter to rest. The Melle Mel Video's then-owner chose to post it on a platform that extends a license and sublicense to third parties to embed that content and Plaintiff, as copyright holder, cannot now complain that third parties are relying on the terms agreed to regarding that Video. Online news publishers are moreover entitled to rely on the license and sublicense granted through YouTube's TOS, which are unambiguous and facially valid. Publishers should not have to endure costly and chilling discovery to prove what the pleadings and TOS license agreement subject to judicial notice establish unambiguously: Embedding content posted to YouTube by its rightsholder is not copyright infringement. Nor, under clear law, does the use of a single frame of a video work being reported upon, in order to draw readers' attention to that report, amount to infringement.

As to the use of the Michael Jordan Video, plaintiff attempts to convince the court to eschew a significant body of caselaw supporting the proposition that where, as here, a video like the Jordan Video is "the story," a news report on that video may, consistent with fair use, include a copy of the video itself.

1

**ARGUMENT**

I.   **TOWNSQUARE HAS A VALID LICENSE TO EMBED THE MELLE MEL VIDEO**

As a preliminary matter, Plaintiff's argument that the YouTube Terms of Service ("YouTube TOS") are improperly before this Court, Opp. at 4, is unsupported by the law. The Opposition proposes that the Court may only take judicial notice of the fact that the Terms of Service exist, but this misconstrues Fed. R. Evid. 201(b)(2), which permits judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," like website terms of service. *See 23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of content of website whose authenticity was not in question). And, as set out in Defendant's opening Memorandum of Law ("Motion" or "Mot"), it is well settled that courts may take judicial notice website terms of service in particular. *See* Mot. at 6-7; *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (finding that Facebook's publicly available Terms of Service and Community Standards were subject to judicial notice). Courts have even taken judicial notice of website terms of service specifically in order to evaluate whether they include license agreements sufficient to preclude claims of copyright infringement, precisely the circumstances here. *See, e.g.*, *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 600 n.2, 603 (S.D.N.Y. 2020) ("*McGucken I*") (taking judicial notice of Instagram's Terms of Use and finding that "the Terms of Use unequivocally grant Instagram a license to sublicense Plaintiff's publicly posted content"); *Santiago v. Townsquare Media, Inc.*, 2024 U.S. Dist. LEXIS 143298, at *4 (S.D.N.Y. Aug. 7, 2024) (same). There is no reasonable dispute that the Court may take judicial notice of the YouTube TOS and evaluate whether they granted Townsquare a valid license to embed Plaintiff's Videos.

2

And the YouTube TOS do grant a valid license to Townsquare, both by providing that in posting content to YouTube, a rightsholder grants a license to third parties to that embed content, and by granting YouTube the right to sublicense other to use posted content, which YouTube exercises through its rights-granting provision. *See* Mot. at 9-10. Thus, the YouTube TOS contain *two independently* valid licenses granting Townsquare the right to embed videos posted to that platform.

In arguing otherwise, the Opposition points to *Sinclair v. Ziff Davis, LLC*, 2020 WL 3450136 (S.D.N.Y. June 24, 2020) and *McGucken v. Newsweek LLC*, 2022 WL 836786 (S.D.N.Y. Mar. 21, 2020) ("*McGucken II*"), cases concerning a *different* social media platform's terms of service, which have entirely distinct structure and language. Opp. at 6-7. These cases thus do not dictate a result here. They do, however, provide useful guidance: *First*, Sinclair held outright, and correctly, that "courts may find a license on a motion to dismiss where the terms of the governing contracts are clear," *Sinclair*, 2020 WL 3450136, at *1 (citation omitted), belying the Opposition's claim that because a license is an affirmative defense it cannot be decided on a motion to dismiss. Opp. at 4-6. *Second*, both cases held that where a plaintiff agrees to grant a sublicensable license in work posted to a social media platform, that license is effective and the platform may sublicense to third parties through its terms. *Sinclair*, 2020 WL 3450136, at *1 ("by agreeing to Instagram's Terms of Use, Plaintiff authorized Instagram to grant API users, such as Mashable, a sublicense to embed her public Instagram content, as set forth in Instagram's Platform Policy"); *McGucken II*, 2022 WL 836786, at *7 ("there is no dispute that Instagram had the authority to grant a sublicense to Defendant"). *Third*, both cases held that for an express license or sublicense grant to a third party in a website's terms of service to be valid, it must convey "explicit consent." *Sinclair*, 2020 WL 3450136, at *1 (finding the Instagram Terms of

3

Service language indicating the embedding functionality was "intended to 'help broadcasters and publishers discover content, get digital rights to media, and share media using web embeds'" did not "expressly grant[] a sublicense to those who embed publicly posted content"); *McGucken II,* 2022 WL 836786, at *7 (holding that same Instagram language was "insufficiently clear"). Thus, these cases establish that if a terms of service license grant is sufficiently clear, it is valid and grounds for dismissal of a copyright claim as a matter of law.

Those cases were decided against the defendants because the license grant language at issue did not meet this standard. But the difference between the relevant language in the Instagram Terms and the language in the YouTube TOS at issue here is vast. Rather than implying YouTube's "inten[t]" that third parties use embedding to "share media," the YouTube TOS include a specific grant of rights, including the right to sublicense, to YouTube, Mot. at 9-10, as well as a specific, explicit, and unambiguous grant of rights to users of the embed feature. The latter grant on its own resolves this matter, providing that, when posting content to YouTube:

> You also grant each other user of the Service a worldwide, non-exclusive, royalty-free license to access your Content through the Service, and to use that Content, including to reproduce, distribute, prepare derivative works, display, and perform it, only as enabled by a feature of the Service (such as video playback or embeds).

Myers Decl. (Dkt. 26) Ex. G. This granting language is clear and explicit, bearing no relation to the vague intentions conveyed by the language at issue in *McGucken* and *Sinclair*.[1] Plaintiff attempts to muddy the waters by asking the Court to read the YouTube TOS as confusing and

---

[1] Plaintiff contends that "…Defendant also fails to provide any authority that supports its position that a copyright owner waives or relinquishes its exclusive copyrights simply by posting its copyrighted content to social media." (Opp. at 9). But Townsquare makes no such argument. Instead, Townsquare's argument is that where an author like Plaintiff voluntarily grants an explicit license to others via *specific* website terms of service, that license is valid. Plaintiff's reliance on *Graham v. Prince,* 2023 WL 3383029 (S.D.N.Y. May 11, 2023), is thus misguided, as defendant there argued that the fact of posting to social media created an *implied* license to use the work in non-online media, rather than arguing that his use was made pursuant to an *explicit* license entered into by plaintiff via any website terms of service agreement. *Id.* at *71.

4

subject to more than one reasonable interpretation, Opp. at 8, but fails to identify any other reasonable way to interpret this provision, because there is none.

Plaintiff then proposes that the YouTube TOS license grant is subject to "significant affirmative obligations," citing the "Restrictions" subsection of the YouTube TOS section "Your Use of the Service." Opp. at 6-8. Yet, critically, the license grant language is in a separate "Your Content and Conduct" section of the TOS, which *does not incorporate, or even reference, the "Restrictions" section*. See Myers Decl. Ex. G at 5-7, 8. Under basic principles of contractual law, because the Restrictions are not specifically incorporated into the license grant, they cannot be read as a condition precedent to the license grant. Under California law (the law governing the applicable YouTube terms), "[c]onditions precedent are disfavored . . . and courts will not construe contract terms to create conditions precedent unless the language of the contract clearly requires such a construction." *Sullivan v. Finn,* 2017 WL 1209933, at *5 (N.D. Cal. Apr. 3, 2017) (citing *Helzel v. Superior Court*, 123 Cal. App. 3d 652, 663 (Cal. Ct. App. 1981)) ("conditions precedent are not favored and an agreement will be strictly construed against a party asserting that its provisions impose a condition precedent."); *Sosin v. Richardson*, 210 Cal. App. 2d 258, 264 (Cal. Ct. App. 1962). Indeed, even if the TOS had made the license grant "subject to" compliance with the TOS writ large—and they do not—this would still be insufficient to create a condition precedent to that grant. *See Sullivan*, 2017 WL 1209933, at *6 (finding that the language "Subject to the terms and conditions of this Agreement" is insufficient to form a condition precedent).

At best, the Restrictions can be read as restrictions upon YouTube's license to use *its* services—not on the license content owners grant to users with regard to *their* content. They

5

therefore operate only as a basis for YouTube to exercise its rights.[2]  Indeed, Plaintiff does not argue otherwise, and fails to explain how a violation of the Restrictions could impact the license to the Melle Mel Video.  *See* Opp. at 8-9.  This is because it does not, under any reasonable reading of the YouTube TOS.  Accordingly, even if Townsquare had violated any part of the YouTube TOS Restrictions subsection, such violation would not be Plaintiff's to enforce, and would not impact the license granted by the Melle Mel Video's owner to Townsquare and other third parties.

In any event, and even if this could have any impact on the license grant (and it does not), Plaintiff fails to identify any violation of the YouTube TOS Restrictions.  Plaintiff's only attempt is in suggesting that Townsquare's embedding of the Melle Mel Video was a prohibited commercial use because Defendant's website contains advertisements.  Opp. at 8.  Yet, the relevant restriction specifies that users are only restricted from selling "advertising, sponsorships, or promotions on any page of any website or application that ***only* contains Content from the Service or where Content from the Service is the *primary basis* for such sales** (for example, selling ads on a webpage where YouTube videos are the main draw for users visiting the webpage)."  Myers Decl. Ex. G at 7 (emphasis added).  Here, the pleadings are inconsistent with any conclusion that the Townsquare violated this restriction.  As the FAC acknowledges, Townsquare does not operate mere landing pages for embedded YouTube videos devoid of context, but is a "sophisticated news outlet" that engages in "journalistic practices" in creating and publishing articles.  FAC ¶¶ 27, 28.  Moreover, the Melle Mel Articles at issue include reporting upon the embedded Melle Mel Video.  Myers Decl. Exs. E- F.  Nor is there any

---

[2] For example, the TOS provide: "YouTube reserves the right to suspend or terminate your Google account or your access to all or part of the Service if (a) you materially or repeatedly breach this Agreement; (b) we are required to do so to comply with a legal requirement or a court order; or (c) we reasonably believe that there has been conduct that creates (or could create) liability or harm to any user, other third party, YouTube or our affiliates." Myers Decl. Ex. G at 11.

6

allegation—nor could there be—that embedded YouTube content in a few of XXL's articles constitutes the "main draw" for visitors as well as the "primary basis" for ad sales on those webpages.

## II.     DEFENDANT'S EMBED OF THE JORDAN VIDEO WAS FAIR USE

Preliminarily, Plaintiff's claim that it is never appropriate to determine fair use on a motion to dismiss, even in circumstances like those here where the fact of fair use is obvious, is unsupported by the law.  To the contrary, "[t]he Second Circuit has specifically acknowledged 'the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim.'"  *Santos v. Kimmel*, 2024 WL 3862149, at *3 (S.D.N.Y. Aug. 19, 2024) (quoting *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)).  *See also* Mot. at 11-12.  Plaintiff's suggestion that the Supreme Court's ruling in *Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) somehow "narrowed the applicability of the fair use defense and the ability to resolve the same at the motion to dismiss stage," Opp. at 10, portrays a fundamental misunderstanding of the ruling, which did not narrow the fair use defense, but rather reconceptualized analysis of the first fair use factor where the alleged infringing work directly competes in the market with the original work.  *Warhol*, 598 U.S. at 532-33.  Southern District of New York courts have applied this reframing, but have not read it as precluding dismissal on fair use grounds.  *See Santos*, 2024 WL 3862149, at *1(granting motion to dismiss in light of fair use argument post-*Warhol*); *Kelley v. Morning Bee, Inc.*, 2023 WL 6276690, at *1(S.D.N.Y. Sep. 26, 2023) (same).[3]  The Court is unrestricted from doing the same here.

---

[3] Plaintiff's reliance on *Grant v. Trump*, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021), to support his argument is misplaced, as *Grant* involved pure and total copying and reproduction of plaintiff's musical work in connection with a political campaign advertisement that made *no* transformative use of the work at issue.  The court ultimately held

7

**A.     The First Factor Weighs in Favor of Fair Use of the Jordan Video**

Under *Warhol*'s articulation of the first factor, Townsquare's use of the Jordan Video was plainly transformative. This factor "considers the reasons for, and nature of, the copier's use of an original work," with the central question being "whether the new work merely supersedes the objects of the original creation[,] (supplanting the original), or instead adds something new, with a further purpose or different character." *Warhol*, 598 U.S. at 528. Plaintiff argues that the secondary use Townsquare made of the Jordan Video was not transformative because the Jordan Video is merely an "illustrative aid," Opp. 15-16, but ignores that the first factor can favor even illustrative uses when the purpose is to illustrate a report *upon* the work. *See, e.g.*, *Aug. Image, LLC v. Girard Ent. & Media LLC,* 2024 WL 1375480, at *4 (S.D.N.Y. Apr. 1, 2024) (use of whole photograph that had been posted to social media was "transformative because it [went] beyond merely displaying the photograph for the precise reason it was created.") (internal quotations and citation omitted); *Barcroft Media, Ltd. v. Coed Media Grp.*, LLC, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("a news report about a video that has gone viral on the internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about"). Here, Townsquare embedded the Jordan Video in connection with a news report about the reaction of one of the men purportedly involved to the Video's virality. *See* Myers Decl. Ex. D. Thus, the Jordan Video was not a mere illustration of the events captured; it was a *subject* of the article's reporting.

Townsquare's use is also readily distinguishable from the cases Plaintiff cites in support of his argument. For example, in *Lynk Media, LLC v. Peacock TV LLC*, 2024 WL 2057235, at *3 (S.D.N.Y. May 8, 2024), the court declined to dismiss claims arising from the use of the

---

(independent of whether fair use could be found on a motion to dismiss) that the lack of transformation undermined any potential fair use argument. *Id.* at 289.

8

plaintiff's videos where the use was unaccompanied by *any* commentary or reporting, and merely illustrated the defendants' profile of the video's subject.[4]  The circumstances here are more akin to those in *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 861 F. Supp. 2d 336, 342 (S.D.N.Y. 2012), where the Court found it fair use to include the entirety of a copyrighted earnings call recording in a news article about that call, *aff'd*, 742 F.3d 17 (2d Cir. 2014), *and aff'd*, 756 F.3d 73 (2d Cir. 2014).

Nor, contrary to Plaintiff's contention, does Townsquare being a commercial enterprise factor in measurably as to the Video.  Opp. 18-19.  As the Second Circuit has recognized, "'[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit,'" and it has "discounted this consideration where 'the link between [the defendant]'s commercial gain and its copying is ... attenuated' such that it would be misleading to characterize the use as 'commercial exploitation.'"  *See Swatch Grp.*, 756 F.3d at 83 (citations omitted).  Because the commercial gain alleged here was derived from advertising on Townsquare's website, rather than any commercialization of the use itself, *see* FAC ¶¶ 24-26, this does not weigh into the first factor.

## B.   The Second Fair Use Factor Weighs in Favor of Fair Use

With respect to the second fair use factor, the nature of the copyrighted work, Plaintiff has not disputed that this factor does not weigh in his favor.  *Compare* Mot. at 15-17 *and* Opp. at 19-20.  As the Opposition concedes, the Jordan Video is "generally factual in nature and published."  Opp. at 20.

---

[4] The other cases Plaintiff cites are similarly inapposite.  In *Hirsch v. Complex Media, Inc*., 2018 U.S. Dist. LEXIS 209701, at *17 (S.D.N.Y. Dec. 10, 2018), the court rejected defendant's fair use defense because the secondary work included plaintiff's photograph in an article merely to depict individuals being reported upon, unlike here, where the photograph was included because the Video *was* the story.  Similarly, in *Sands v. What's Trending*, 2021 U.S. Dist. LEXIS 33503, at *5 (S.D.N.Y. Feb. 23, 2021), the defendant's article featuring plaintiff's photograph was written to "provide potential viewers with a sneak peek" at a famous actor in a highly anticipated role, which was precisely the same purpose for which they were created.  Here, the Jordan Article included the years-old Jordan Video not to free ride upon its contents, but to report upon a new public reaction to it by an alleged participant.

9

## C.     The Third Factor Weighs in Favor of Fair Use

Plaintiff argues that the third fair use factor weighs against Townsquare because the Jordan Video was "produced at full length without any visible modification." Opp. at 20. As a preliminary matter, the Second Circuit has made clear that, "[f]or some purposes, it may be necessary to copy the entire copyrighted work, in which case Factor Three does not weigh against a finding of fair use." *Authors Guild*, 755 F.3d at 98 (citing *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) (entire image copied)); *see also* Barton Beebe, An Empirical Study of U.S. Copyright Fair Use Opinions, 1978–2005, 156 U. Pa. L. Rev. 549, 616 (2008) ("Of the 99 opinions that addressed facts in which the defendant took the entirety of the plaintiff's work, 27.3% found fair use."). Here, moreover, Townsquare did not copy the entire work, but only embedded it. This distinction is material for two reasons: First, because it does not involve creating a copy, there is no way to alter the amount of a work embedded—it is either embedded in full, or not used at all. Second, embedding does not involve any reproduction and disappears if the embedded post is taken down, and therefore limits the potential downstream impact of a work being disseminated online. Accordingly, embedding is a practical means of *avoiding* using more of a work than necessary. *See Walsh v. Townsquare Media*, 464 F. Supp. 3d 570, 585–86 (S.D.N.Y. 2020) ("Defendant used only as much of the Photograph as was already included in [a third party's social media] Post; in other words, 'no more was taken than necessary.'").

Further, Plaintiff's argument that it was unnecessary for Townsquare to use the entire Jordan Video to effectuate its news reporting purpose is unsupported by the law. The Second Circuit has recognized that "[i]n the context of news reporting and analogous activities, . . . the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without

10

alteration." *Swatch*, 756 F.3d at 84. Here, such a use was necessary to fully and accurately report on the extent of Jordan's involvement in the altercation on which Defendant reported.

Plaintiff further argues that the third factor favors him because Townsquare had "alternatives" to copying the Jordan Video. This nonsensical argument that a news article can contextualize a report upon a work by using a *different* work has been rejected numerous times, including in *Clark v. Transp. Alts., Inc.*, 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019), where the court held that "Clark's argument – that [defendant] TransAlt could have commissioned a different photograph of a dockless bicycle, licensed the Photograph, or used no photograph at all – is entirely meritless." *Id.* at *4; *see also Swatch Grp.*, 756 F.3d at 90 (rejecting argument that news report on earnings call could have incorporated a transcript rather than the copyrighted audio recording, since "the recording has independent informational value over and above the value of a written transcript or article"). Such is the case here, as Townsquare's inclusion of the Jordan Video was not merely illustrative or fungible, but was necessary to its reporting upon that Video. For these reasons, this third factor also weighs in favor of fair use.

## D.     The Fourth Factor—the Effect on the Market—Also Supports a Finding of Fair Use

Plaintiff argues that Defendant is attempting to impermissibly shift the burden of proof as to market harm to Plaintiff, Opp. at 22-23, but Defendant's arguments do no such thing. To the contrary, Defendant has carried its burden by proving that its use of the Jordan Video is so transformative that it cannot serve as a substitute for the original, as the more the objective of secondary use differs from that of the original, the less likely it will supplant the commercial market for the original. *See Authors Guild v. Google, LLC*, 804 F.3d 202, 223 (2d Cir. 2015).

When considering the fourth fair use factor, the focus is on whether the use would "deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at

11

223. Here, because the Video did not appear on its own, but as part of Defendant's news reporting alongside text and another image, it is "implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of [his] work." *Walsh*, 464 F. Supp. 3d at 586; *Clark*, 2019 WL 1448448, at *4-5. The fourth factor weighs in favor of a finding of fair use.

### III. TOWNSQUARE'S USE OF THE SCREENSHOTS IS NOT ACTIONABLE AS THE USES WERE *DE MINIMIS* AND FAIR

#### A. Townsquare's Use of the Screenshots Was *De Minimis*

In arguing against Townsquare's *de minimis* use defense as to the single-frame Screenshots of the Videos, the Opposition barely mentions the on-point caselaw finding *de minimis* use in indistinguishable circumstances. *See* Mot. at 20-22; *Rudkowski v. MIC Network, Inc.*, 2018 WL 1801307, at *4 (S.D.N.Y. Mar. 23, 2018). Instead, Plaintiff's proposes that because the Screenshots were "material to the subject matter of the Defendant's articles," Townsquare's use cannot be *de minimis*. *See, e.g.*, Opp. at 24. The *de minimis* analysis does not turn on the Plaintiff's conclusory claims of materiality, however, but instead asks whether a portion taken is bears "substantial similarity" to the original work. *Rudkowski*, 2018 WL 1801307 at *3. In making this assessment, "courts often look to the amount of the copyrighted work that was copied," *id*. at *4, and here the Screenshots captured approximately 0.02% of the Melle Mel Video and 0.1% of the Jordan Video. The cases cited by Plaintiff involved a far more significant use. *See Dyer v. V.P. Records Retail Outlet, Inc.*, 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008) (plaintiff's works used in approximately 5% of the work at issue); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc*., 166 F.3d 65, 71–72 (2d Cir. 1999) (20% of plaintiff's work copied).

12

Nor are the Screenshots qualitatively significant, as they are static images failing to capture any of the sound, movement, or dialogue—i.e., the material components—of the original works' video medium. *See* Mot. at 22. *Cf. Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) (copied portion of plaintiff's software code was not *de minimis* where it operated pursuant to its original purpose and served as a central functional component of defendant's own software). Thus, the Screenshots at issue constitute quantitatively and qualitatively trivial portions of the Videos, and are therefore not actionable as infringement.

B.      Townsquare's Use of The Screenshots Was Fair Use

      1.      The First Fair Use Factor Favors Townsquare

Under the first factor, Townsquare's use of the Screenshots was transformative. Plaintiff argues that the secondary use Townsquare makes of the Screenshots is not transformative because "Defendant's commercial use of the [Screenshots] are for the exact –if not highly similar – purpose as the underlying Videos from which they were taken," Opp. at 25, but the purpose of Defendant's use is wholly dissimilar to Plaintiff's purpose in authoring the underlying Videos. As discussed at length in Defendant's Motion, Mot. at 22-23, Townsquare's use of the Videos is aimed at alerting readers to the existence of the Videos and its reporting upon them, while Plaintiff's purpose was to present the *contents* of said videos—namely the interview of Mel Melle and the altercation involving Michael Jordan. *See, e.g.*, *Barcroft Media*, 297 F. Supp. 3d at 352 ("a news report about a video that has gone viral on the internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about"). Because a still image by definition cannot serve the same purpose as a video recording—a maxim particularly true in this case where the Videos captured the contents of an audio interview and a physical altercation—the character of Townsquare's use is meaningfully different from Plaintiff's.

Moreover, and as discussed *supra* at 9, Townsquare's status as a commercial enterprise does not tip the scales in Plaintiff's favor. *See Swatch Grp.*, 756 F.3d at 83 (citations omitted).

### 2.  The Second Fair Use Factor Weighs in Favor of Fair Use

With respect to the second fair use factor, the nature of the copyrighted work, Plaintiff again has not offered any argument that this factor favors him, since the works at issue are "generally factual in nature and published." Opp. at 26.

### 3.  The Third Fair Use Factor Favors Defendant

Plaintiff conflates Townsquare's *de minimis* and fair use arguments, contending that the Screenshots "cannot possibly be 'trivial' as they were specifically hand-picked by Defendant and utilized as cover images for their respective articles." Opp. at 26. First, the amount used *was* trivial, as set out *supra*. But even if it weren't, this would not tip the third factor to Plaintiff, since this factor does not turn on triviality but permits a secondary user to "'conjure up' at least enough of the original to fulfill its transformative purpose." *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013). Here, Townsquare's use of the Screenshots borrowed the bare minimum, fulfilling its obligation to use "no more . . . than necessary" to fulfill its transformative purpose of news reporting on the Videos. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 589 (1994) (citation omitted). *See also*, *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 546-47 (S.D.N.Y. 2019) ("[I]f copying the original 'any less would [make] the picture useless to the story[,]' the substantiality of the copying is 'of little consequence.'") (citation omitted), *aff'd,* 2022 WL 906513 (2d Cir. Mar. 29, 2022). Indeed, Townsquare could hardly have conjured up less of the Videos in using 1-2 single frames from each. The third factor unmistakably favors this use.

### 4.  The Fourth Factor—the Effect on the Market—Supports Fair Use

Plaintiff's arguments as to the fourth factor with respect to the Screenshots misstate his allegations. Plaintiff argues that the market harm he suffered as a result of Townsquare's use of

14

the Screenshots is derived from "allowing news reporting agencies and/or paid streaming subscription platforms to take any portion of Plaintiff's rights-protected Videos under the guise of creating a 'news report,'" Opp. at 23, 28, but the FAC fails to identify any actual, specific harm Plaintiff suffered as a result of the Screenshots. Nor does Plaintiff present a plausible theory of how the widespread use of single frame screenshots from the Videos could damage the market for licensing the Videos themselves. Indeed, there is "little risk" that someone looking to license Plaintiff's Video would settle for one or two static Screenshots instead of the Videos themselves. *See Yang*, 405 F. Supp. 3d at 548 ("In light of the cropped and composite manner in which the Mic Article presents the Photograph, it is implausible that potential purchasers would opt to use the Screenshot rather than license the original Photograph."). Accordingly, the fourth factor favors Townsquare.

## IV.     CONCLUSION

For the foregoing reasons, Townsquare respectfully requests that the Court grant its motion for judgment on the pleadings, dismiss the FAC in its entirety with prejudice, and award Townsquare its attorneys' fees and costs as the prevailing party under 17 U.S.C. § 505.

Dated:   November 26, 2024
         New York, New York

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**

By: /s/ *Abigail B. Everdell*
    Rachel F. Strom
    Abigail B. Everdell
    Celyra I. Myers

1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax

*Attorneys for Defendant Townsquare Media, Inc.*

15